PAYNE, Plaintiff and Appellant, v. THE BILCO COMPANY, Defendant and Third-Party Plaintiff and Respondent: J. M. MITCHELL PRODUCTS COMPANY, Third-Party Defendant.

*No. 74. Argued March 1, 1972.—Decided March 28, 1972.*
(Also reported in 195 N. W. 2d 641.)

For the appellant there was a brief by *Charles M. Hanratty,* attorney, and *James A. Hanley* of counsel, both of Milwaukee, and oral argument by *Mr. Hanratty.*

For the respondent there was a brief by *Kivett & Kasdorf*, attorneys, and *John M. Swietlik* of counsel, all of Milwaukee, and oral argument by *Mr. Swietlik.*

HEFFERNAN, J. On this appeal, plaintiff contends that the trial court erred in refusing to allow him to amend his complaint to conform to the proof and to dismiss the action as to the defendants Permanent, Sommerville, and Skobis. It should be pointed out that plaintiff's oral motion to dismiss these three defendants was superfluous inasmuch as they had earlier been dismissed as parties by the court's order of October 14, 1970, after plaintiff had settled his claim with them and given a release.

Plaintiff also contends that he should have been permitted to amend his complaint to reflect the fact that those three defendants were not parties following the giving of the release. In respect to this contention, the record reveals that, at an earlier time, the plaintiff specifically declined to amend his complaint although the court had given him an opportunity to do so.

In any event, whether or not those three parties continued to be named in the complaint was immaterial, inasmuch as they were proper to be named in the special verdict for the purpose of the jury's apportionment of negligence. As an experienced lawyer, plaintiff's counsel no doubt realized, when it came time to frame the special verdict, that the jury would be likely to apportion a larger portion of the negligence to the three defendants who had already settled. Such apportionment would drastically curtail the plaintiff's chances of recovering from Bilco and Mitchell under the comparative-negligence law. Thus, it appears that what plaintiff's counsel really sought was the elimination of the three dismissed defendants from the special verdict. That position, however, is inconsistent with counsel's agreement of record that he approved of the special verdict in the form sub-

mitted to the jury.. Blackhawk, plaintiff's employer, also was included in the special verdict although it never was a party to the action; and as to Blackhawk there could be no recovery by the plaintiff, since the record seems to indicate that workmen's compensation payments, an employee's exclusive remedy against an employer, had already been made.

Even as to those parties who had been dismissed, the plaintiff had no right to have them removed from that portion of the verdict which apportioned the negligence. Their inclusion in the special verdict was not error; and the deletion of Permanent, Sommerville, and Skobis and Blackhawk would have been prejudicial to the defendants Bilco and Mitchell.

In the case of *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, this court enunciated the rule that the negligence of all joint tortfeasors must be apportioned according to their degree of negligence.

In *Pierringer v. Hoger* (1963), 21 Wis. 2d 182, 124 N. W. 2d 106, it was held to be error, where a plaintiff had settled with some of the defendants and given releases, not to include such defendants in the special verdict for the purpose of comparing negligence. We pointed out that there is no merit in the contention that a settling tortfeasor had to be a party to the lawsuit for the jury to apportion negligence. In *Pierringer*, we stated at pages 191, 192:

". . . such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. . . .

". . . Under sec. 270.27, Stats., which requires a special verdict on all material issues, both the plaintiff and defendant are entitled to have the percentage of the nonsettling tort-feasor's negligence determined."

The failure to include the settling tortfeasors and the employer Blackhawk would necessarily have been preju-

dicial to Bilco and Mitchell. It was immaterial in the context of this case and nonprejudicial to the plaintiff whether or not his complaint was amended and the settling parties dismissed, because, in any event, it was necessary that all the alleged tortfeasors be included in the special verdict for comparison purposes. *See Magnuson v. Fairmont Foods Co.* (7th Cir. 1971), 442 Fed. 2d 95, 99; McComas, *Tort Releases in Wisconsin,* 49 Marq. L. Rev. (1965–66), 533; Aiken, *Proportioning Comparative Negligence,* 53 Marq. L. Rev. (1970), 293, 305.

Plaintiff's counsel also objects to the inclusion of the employer Blackhawk, not only for the reason that it was never a party to the lawsuit, but because its negligence, if any, was under the safe-place statute. No objection was made to the safe-place instruction as it referred to the duties of Blackhawk. Irrespective of the statutory basis of the employer's negligence, it nevertheless was proper to include it in the special verdict and necessary to do so to make the required apportionment of the negligence. No problem arises because the negligence of Blackhawk was under the safe-place statute and that of the other defendants arose under the common-law standards of ordinary care. We held in *Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 346, 173 N. W. 2d 196, that it is proper to compare such types of negligence even though they be founded upon duties that arise from differing sources.

Plaintiff's counsel also argues that the court erred in failing to submit a *res ipsa loquitur* instruction to the jury. The request for a *res ipsa* instruction does not appear in the record. Sec. 270.21, Stats., requires in part:

"Requests for instructions to the jury must be submitted in writing before the argument to the jury is begun, unless in the opinion of the trial judge, special circumstances excuse failure to so submit such requests."

While this court will consider errors in instructions although no request was timely made, an objecting party is not entitled as a matter of right to a review in respect to instructions not requested. *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 702, 154 N. W. 2d 237.

In the instant case, where the court specifically asked counsel if he approved of the proposed instruction and he answered affirmatively and it appears that there has been no miscarriage of justice, we decline to review the instructions submitted to the jury.

Similarly, plaintiff's counsel complains that the court erred in not giving an instruction which would have informed the jury that no undue weight should be given to the court's finding that Permanent, Sommerville, and Skobis were negligent as a matter of law. No request was made for such instruction. In *Reyes v. Lawry* (1966), 33 Wis. 2d 112, 123, 146 N. W. 2d 510, we said, ". . . where the complaining party does not request such an instruction, he 'cannot complain about the failure to give it.'" In *Schmit v. Sekach* (1966), 29 Wis. 2d 281, 291, 139 N. W. 2d 88, we held that the failure to give such an instruction was neither error nor prejudicial.

Plaintiff also contends that it was error for the trial court to fail to give an instruction on the collateral-source rule in regard to the plaintiff's loss of earning capacity. The collateral-source rule provides that the damages to be awarded to an injured person are not to be affected by the fact that the claimant received compensation from other sources, such as sick leave, compensation, or insurance. *See Ashley v. American Automobile Ins. Co.* (1963), 19 Wis. 2d 17, 119 N. W. 2d 359. In the instant case, counsel requested no instruction on the collateral-source rule. In addition, the testimony in regard to payments from collateral sources was elicited almost completely by plaintiff's counsel.

Moreover, the jury was properly instructed that loss of wages was to be determined by the standard of what

"he was reasonably *capable of earning* at his usual trade or occupation during such period as he was unable to perform his usual work or carry on his usual occupation as a natural consequence of the personal injuries . . . ." (Emphasis supplied.) The earning-capacity standard, reasonably interpreted, excludes the jury's consideration of collateral sources to diminish payments for damages sustained as the result of loss of earning capacity. While it well might be appropriate to specifically instruct the jury to disregard such collateral sources, no instruction was asked for here. In this case the plaintiff offered the collateral-source testimony and then neglected to request an instruction which would have informed the jury to disregard that very testimony. In view of the apportionment of negligence, which we find appropriate to the facts, the damage award is immaterial.

A physician, Dr. Elliott Coles, was called by the defendants and was qualified as an expert orthopedic surgeon. A hypothetical question was submitted to him which required him to give his opinion, to a reasonable degree of medical probability, in respect to the injuries which would have been sustained had the accident occurred in the manner related by Payne. Payne testified that the door had rebounded and fallen on his arm. Payne stated that the skin was not broken and there was no bleeding. Plaintiff's counsel persistently objected to any testimony by the doctor that would have tended to show that Payne's version of the accident was incredible. After numerous objections, which were uniformly sustained by the trial judge, a conference was had in chambers. In chambers, the doctor acknowledged that his opinion, which he had intended to offer to show that the injuries if sustained in the manner related would have been much more serious, was speculative. Accordingly, in chambers the judge instructed him to limit the scope of his opinion. When he returned to the stand, the doctor was asked whether he had an opinion to a reasonable degree of certainty as to what effect the slamming

door would have on Payne's wrist. He responded, "There would be substantial damage to the hand and wrist." He was asked, "Can you tell us what you mean by substantial damage from a minimum to a maximum?" He responded, "Well, the skin would be broken and in all likelihood there would be fractures." On cross-examination he admitted that he never saw the doors and he did not know anything about the surface (edges) of the doors.

Although it is apparent that there was an attempt to introduce evidence tending to show that, had the accident occurred in the manner related by Payne, the injuries would have been more severe, the attempt to introduce this evidence was thwarted by counsel's prompt and proper objections. In the end, all that Dr. Coles said was that there would have been substantial injury—the breaking of the skin and probable fractures. In fact, there was a contusion of the skin and an actual fracture, and even Dr. Coles on cross-examination admitted that the injury sustained was substantial.

In addition, testimony was subsequently introduced which showed that Dr. Coles erred in his facts. Such subsequent testimony showed that the hinged door, closing even without the cushioning effect of the springs, would have exerted a force of 150 pounds and not 275 pounds, as the doctor testified.

The prejudicial testimony of Dr. Coles was given only out of the presence of the jury. That testimony never came into evidence, and we are satisfied that the plaintiff was not prejudiced by what the doctor said in the presence of the jury.

Plaintiff's counsel also claims error because the court ordered his engineering witness to produce the third page of a report prepared at an earlier time for plaintiff's counsel. The expert did not have the third page of the report with him on the witness stand. The trial judge concurred in defendant's attorney's demand that the third page be produced. Plaintiff objected to the production

of the third page on the grounds that it was his lawyer's work product. Such privilege, however, is not applicable at trial under the circumstances revealed here. We said in *Shaw v. Wuttke* (1965), 28 Wis. 2d 448, 456, 137 N. W. 2d 649:

"We hold the immunity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at the trial."

Plaintiff also contends that he was prejudiced by the trial court's exclusion of the guarantee of Bilco products that appeared in one of Bilco's catalogues. That guarantee stated:

"This Bilco product is guaranteed to operate properly and to be free of defects in material and workmanship for a period of five years from date of purchase. Any part that fails to function or breaks in normal use during this period will be replaced at no charge."

We see no error in such exclusion. The guarantee referred to other doors manufactured by Bilco and not to the one installed at the Blackhawk Manufacturing Company. The door at the Blackhawk building was custom-made according to the architect's specifications. The guarantee was irrelevant to this cause of action. Moreover, the literal interpretation of the guarantee limits the liability of Bilco to the replacement of parts. Plaintiff's counsel denied that he was pursuing any claim for breach of warranty and said he was relying only upon negligence in the manufacture or operation of the door. Plaintiff was in no way limited in his efforts to prove such negligence. It was not error to exclude Bilco's warranty of other doors manufactured by it.

Plaintiff's counsel also argues that Payne was denied a fair trial in that damages were so low as to shock the conscience of the court. He asks that a new trial be granted in the interest of justice under sec. 251.09, Stats.

There was credible evidence to support the jury's damage verdict. Although there was testimony that Payne had some permanent disability, there was also testimony that he should have no restriction in lifting six or eight weeks after his last operation. There was also a plethora of testimony to show that the plaintiff had been involved in multiple accidents both prior to and after the accident on the Blackhawk premises. The jury well could have reasoned that a portion of the injuries complained of by the plaintiff were the result of other accidents.

Trial counsel attempts on appeal to prove that the jury award was inadequate because $6,000 had been obtained upon releasing the three settling parties. It is as reasonable to conclude, however, that the settlement figure is a tribute to plaintiff's counsel's bargaining acumen, as it is to conclude that the jury was incorrect in its appraisal of the damages.

A new trial in the interest of justice will not be granted unless this court, " 'has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole.' " *Landrey v. United Services Automobile Asso.* (1970), 49 Wis. 2d 150, 160, 181 N. W. 2d 407. Plaintiff's counsel really made his election in regard to the outcome of this lawsuit, and probably very wisely so, when he settled with the parties whom the jury eventually determined to be the most negligent. Having done so, there was little probability, even under optimum circumstances, that Bilco and Mitchell could have been found to be more negligent than the plaintiff.

Additionally, a review of the record reveals that the plaintiff does not attack the sufficiency of the evidence, the apportionment of negligence by the jury, the form of the special verdict, or the fact that the three third-party defendants who had settled with the plaintiff were found causally negligent as a matter of law. We find nothing which would impel this court to reverse and to order a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.