Rick S. HAASE, Plaintiff-Respondent,

v.

R&P INDUSTRIAL CHIMNEY REPAIR CO., INC.,† a foreign corporation, and United States Fidelity & Guaranty Co., Defendants-Appellants,

LIBERTY MUTUAL INSURANCE COMPANY, a foreign insurance corporation, Defendant.

Court of Appeals

*No. 86–1672. Submitted on briefs March 2, 1987.—Decided May 19, 1987.*

(Also reported in 409 N.W.2d 423.)

† Petition to review denied.

For defendants-appellants, there were briefs submitted by *Thomas L. Schober* of Green Bay.

For plaintiff-respondent, there were briefs submitted by *Irving G. Curry III* and *I. Gregg Curry IV* of Kaukauna.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   R&P Industrial Chimney Repair Co., Inc., appeals an order for judgment and a judgment granted to Richard Haase arising out of an industrial accident. R&P contends that (1) the trial court erroneously excluded from the verdict an inquiry as to Van Eperen Painting Company's negligence; (2) the evidence is insufficient to support the verdict; (3) cumulative prejudicial error warrants a new trial; and (4) the damage award is excessive. We reject these challenges and affirm.

Richard Haase, a part-time laborer at Mid-Tech Paper Company, was buried in hot fly ash while cleaning the bottom of a smokestack. He sustained second- and third-degree burns over more than 15% of his body and an arm fracture. Mid-Tech had contracted with Van Eperen to clean the fly ash from the bottom of the smokestack and with R&P to repair the stack itself.

The evidence establishes that fly ash accumulation in the bottom of the stack was thirty feet deep. The ash, an end product of burning coal, generally has a fine, powdery consistency. Initially, the ash particles are suspended by hot gases and other combustion products and some pass through the emission control system. Due to condensation, the ash sticks to the interior sides of the stack and hardens like concrete. The hardened coat of fly ash at Mid-Tech became thicker toward the top of the stack, reaching a depth of six to ten inches.

For the clean-out operation, Van Eperen supplied a vacuum truck and an operator, and Mid-Tech supplied Haase and one other laborer. The two Mid-Tech employees used a hose from the truck to vacuum the fly ash, which spilled out of an opening in the bottom of the 225-foot stack.

The stack continued in operation during the cleaning process, emitting hot exhaust gases. The repairs were to begin only after the exhaust was diverted to another temporary stack, which R&P was to erect. The job required welding and some hammering.

The afternoon before the accident, the Mid-Tech foreman advised that Van Eperen's cleaning job was not complete until all of the fly ash was removed, but gave no instructions how to remove the remaining fly ash. Haase and his co-worker assumed that they were to enter the base of the stack to break up the hardened layers at the bottom.

Haase and his co-worker continued their work. While on break, Haase noticed three men from R&P working on the connecting duct work. He saw sparks and could hear pounding. After returning to work, Haase was inside the stack when he was knocked to the ground and buried in hot, rock-like, fly ash. He suffered severe burns and a fractured arm. This action ensued.

The trial court granted Van Eperen summary judgment and dismissed both Haase's claim and R&P's cross-claim for contribution. The court determined that Van Eperen was not negligent as a matter of law. Prior to the expiration of the time to appeal the summary judgment, Van Eperen and Haase entered into a *Pierringer* agreement. *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

The case proceeded to trial solely against R&P. The jury found Mid-Tech 65% negligent and R&P 35% negligent.[1] Damages for past and future pain and suffering were determined to be $600,000. Judgment was entered against R&P pursuant to sec. 102.29, Stats.[2]

■

R&P first argues that the trial court erroneously excluded the issue of Van Eperen's negligence from the verdict for comparison purposes. R&P contends that because it did not appeal the summary judgment absolving Van Eperen from negligence as a matter of law, the judgment is not binding precedent to be followed in successive stages of the same litigation. We disagree. When no appeal is taken, as here, all provisions of a judgment, and the findings and conclusions upon which it is based, are conclusive and binding upon all parties to the litigation. *Kreisel v. Kreisel,* 35 Wis. 2d 134, 138, 150 N.W.2d 416, 418 (1967). "When an issue of fact or law is actually litigated, and determined by a valid and final judg-

---

[1]The Worker's Compensation Act, ch. 102, Stats., limits an employer's liability to that imposed under the Act. *See Mulder v. ACME-Cleveland Corp.,* 95 Wis. 2d 173, 177, 290 N.W.2d 276, 278 (1980). An employer liable for worker's compensation benefits may not be joined in an action by an employee against a negligent third party. *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 519, 261 N.W.2d 434, 447 (1978). Nonetheless, the question of the employer's negligence should be included on the special verdict for comparative negligence purposes. *Connar v. West Shore Equip. Co.,* 68 Wis. 2d 42, 45, 227 N.W.2d 660, 662 (1975).

[2]Section 102.29, Stats., provides for employer's reimbursement for benefits paid out of proceeds of payment or settlement obtained from a claim against a third party. *Martinez v. Ashland Oil, Inc.,* 132 Wis. 2d 11, 15–16, 390 N.W.2d 72, 74 (Ct. App. 1986)

ment, the determination is conclusive ...." *Landess v. Schmidt,* 115 Wis. 2d 186, 197, 340 N.W.2d 213, 219 (Ct. App. 1983) (quoting Restatement (Second) of Judgments sec. 27 (1982)). Summary judgment satisfies the requirement of a conclusive and final judgment. *Landess,* 115 Wis. 2d at 191, 340 N.W.2d at 216.

Although *Landess* involved two separate actions, that distinction does nothing to negate the finality of the facts determined by the judgment. The issue of Van Eperen's negligence has been litigated and determined by summary judgment. The summary judgment dismissed Haase's claims as well as R&P's crossclaim. Although the judgment was appealable as a matter of right, sec. 808.03, Stats., R&P chose not to appeal. Thus, the finding that Van Eperen was not negligent as a matter of law is binding and conclusive on R&P.

R&P argues, however, that the *Pierringer* release extinguished its claim for contribution against Van Eperen and, consequently, prevented it from appealing the adverse judgment. This argument misstates the effect of a *Pierringer* release. A *Pierringer* release "operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants ...." *Fleming v. Threshermen's Mut. Ins. Co.,* 131 Wis. 2d 123, 131, 388 N.W.2d 908, 911 (1986). Although it bars subsequent contribution actions that the nonsettling defendants might assert against the settling defendants, *id.,* it does not extinguish the contribution claim, but rather transfers the liability for contribution from the settling defendant to the plaintiff. Consequently, R&P was not prevented from appealing the summary judgment dismissing its claim for contribution.

Nonetheless, R&P asserts that the facts at trial should govern the form of the verdict and that the failure to include the negligence of settling tortfeasors is prejudicial to the remaining defendants. In support of this argument, R&P relies on *Payne v. Bilco Co.*, 54 Wis. 2d 424, 431, 195 N.W.2d 641, 645–46 (1972). In *Payne,* our supreme court restated the general rule that the negligence of all joint tortfeasors must be apportioned according to their degrees of negligence. The court stated that the failure to include in the special verdict settling tortfeasors or employers who are not parties to the action would have been prejudicial error. R&P's argument, however, ignores the effect of the summary judgment exonerating Van Eperen as a matter of law. Because *Payne* does not involve a tortfeasor adjudged to be free from negligence as a matter of law, *Payne* has no application here.

R&P argues further, however, that the evidence of Van Eperen's negligence was not available at the time of summary judgment. R&P contends that Haase and his co-worker's trial testimony differed from their deposition testimony, and that the changed testimony formed a basis for a finding of negligence on the part of Van Eperen. We disagree. If the changed testimony constituted newly-discovered evidence, R&P was required to seek relief from the judgment on that basis in the trial court. *See* secs. 806.07(1)(b); 805.15(3), Stats. It did not.

We conclude that the summary judgment dismissing the claims and cross-claims against Van Eperen was conclusive and binding upon R&P at later stages of the action. Consequently, R&P was precluded from

having Van Eperen's negligence determined by the jury for purposes of comparison.

Next, we conclude that R&P's challenge to the sufficiency of the evidence supporting R&P's negligence is without merit. R&P required a clean smokestack in order to repair it. Expert testimony established that cleaning generally requires someone to enter the smokestack, and that chimney repair crews should be aware of the dangers of falling fly ash. Two experts testified that the fly ash that buried Haase became dislodged due to R&P's welding or pounding on the duct work. R&P offered no evidence of any precaution to avoid injury to persons on the ground below.

R&P argues that it offered evidence to rebut the testimony of Haase's expert witnesses. These assertions, however, go to the weight of evidence and credibility of witnesses, which is solely for the jury to determine. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). Our function is not to look for evidence in the record to sustain a verdict the jury could have reached but did not. *Id.* at 306, 347 N.W.2d at 598. Consequently, because credible evidence supports the verdict, we do not disturb it on appeal. *See id.* at 305, 347 N.W.2d at 598.

R&P's challenges to the form of the special verdict are also without merit. R&P fails to show how it was prejudiced because Van Eperen's name had not been deleted from the caption and because the form of the verdict indicated that it had been proposed by Haase.[3] Section 805.18, Stats.

---

[3]R&P complains that the following language was improper:

R&P also fails to show that the form of verdict misled the jury by inquiring whether R&P was negligent with respect to Haase's "safety."[4] R&P suggests that the use of the word "safety" carries an implication of total responsibility for Haase's well-being. The trial court, however, instructed the jury that R&P's duty was one of reasonable care, and that Haase's immediate employer had the obligation to provide a safe place to work. At trial, it was undisputed that Haase was employed by Mid-Tech. We assume the jury did not disregard the instructions. *Ven Rooy v. Farmer's Mut. Auto. Ins. Co.,* 5 Wis. 2d 374, 379, 92 N.W.2d 771, 774 (1958). In light of the evidence and jury instructions, we find no prejudicial error. *Kealty v. Sponholz,* 200 Wis. 80, 83, 227 N.W. 247, 248 (1929).

■

Finally, R&P contends that a $600,000 award for past and future pain and suffering is excessive. Although large, in light of the evidence of this case the award is not excessive. A jury award of damages is to be upset "only where it is so excessive as to indicate that it resulted from passion, prejudice, or corruption, or disregard of the evidence or applicable rules of law." *Ballard v. Lumbermen's Mut. Cas. Co.,* 33 Wis. 2d 601, 605, 148 N.W.2d 65, 69 (1967) (quoting *Kablitz*

Plaintiff, Richard S. Haase, by his attorneys, McCarty, Curry, Wydeven, Peeters and Riester, proposes the following special verdict:

[4]The challenged verdict question reads:

QUESTION NO. 1: Was the defendant, R&P Industrial Chimney Repair Co., Inc., negligent with respect to the plaintiff's, Richard S. Haase's *safety*? [Emphasis added.]

*v. Hoeft,* 25 Wis. 2d 518, 525, 131 N.W.2d 346, 350 (1964)).

The evidence is that Haase, then twenty-one years old, suffered an extremely painful and disfiguring injury. He did not lose consciousness when buried by the fly ash. Most of his clothing was burned off. He suffered an arm fracture and severe burns to his back, buttocks, sides, and legs. His co-worker observed that Haase's skin appeared to have been peeled off. He underwent five surgeries. The pain he experienced during his slow recovery was documented. The extensive scarring, as well as the decreased sensation in his hand, is permanent. The evidence supports the verdict.

*By the Court.*—Judgment and order affirmed.