PRECISION ERECTING, INC., Plaintiff,

. v.

M&I MARSHALL & ILSLEY BANK, G.A.P., Inc., Central Acoustical Supply House and Verhalen, Inc., Defendants,

AFW FOUNDRY, INC., Defendant-Third-Party Plaintiff-Respondent,

v.

NAMBE MILLS, INC., Third-Party Defendant-Appellant,†

CIRCLE ELECTRIC, INC., Schmitz Ready Mix, Inc., Lippert Tile Company, Inc., RBA, Inc., Cedarburg Lumber Company, August H. Wulf Company, Inc., Waste Management, Inc., A&R Door Service, Inc., AATFAB Corporation, d/b/a Carpenter Technology Communications & Security, American K–9 Services, Inc., Bonafide Doors & Hardware, Inc., JBD Enterprises, Labor Ready, Inc., Antonic & Associates, Ltd., and AGT Corporation, Third-Party Defendants.

Court of Appeals

*No. 97–3029. Submitted on briefs October 12, 1998.—Decided December 16, 1998.*

(Also reported in 592 N.W.2d 5.)

†Petition to review denied.

On behalf of the third-party defendant-appellant, the cause was submitted on the briefs of *Joseph J. Ferris* and *Larry M. Gille* of *Kasdorf, Lewis & Swietlik, S.C.* of Green Bay.

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *Thad W. Jelinske, Esq.* and *Donald A. Allen, Esq.* of *Domnitz, Mawicke, Goisman & Rosenberg, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J. At its core, this case examines the responsibilities of a litigant in a multiparty suit to closely examine any exposure it might have whenever one of the other parties files a motion for summary judgment against another party but not against the litigant. We observe it to be self-evident that a summary judgment motion by its very nature alleges certain facts to be undisputed. If a litigant who is not the subject of the motion for summary judgment nonetheless has reason to dispute the facts supporting the motion, it is that litigant's duty to appear and object to

292

the motion. If not, and summary judgment is granted, the facts underlying that judgment are binding on all other parties to the suit as a matter of issue preclusion. That is what the trial court held and we agree.

AFW Foundry, Inc. (AFW), undertook a project to improve its business property in Waukesha, Wisconsin. It hired Jeffrey Antonic, of Antonic & Associates, Ltd. (Antonic), to coordinate the improvement project. AFW and Antonic signed a Finalized Project Agreement listing the projects which Antonic was to supervise. Among them was a "sand system upgrade," including a mixer/muller used for mixing sand.[1] Antonic went to Nambe Mills, Inc. (Nambe), in New Mexico, and bought the muller. He paid Nambe $7000 down on the purchase price of $70,000. The muller was delivered to AFW in Waukesha.

When Nambe did not receive the balance due, it filed suit in New Mexico against AFW and Antonic for breach of the contract to purchase the muller. Nambe's position was that Antonic had acted as AFW's agent when he purchased the muller, making AFW responsible for the $63,000 balance due. Meanwhile, in Waukesha county, Precision Erecting, Inc., a subcontractor on the AFW improvement project, filed suit against AFW for its unpaid bills. In response, AFW filed a third-party complaint against Nambe and twenty-two other third-party defendants, including

---

[1] Nambe disputes that the muller it sold Antonic is included under the agreement since the original agreement called for a different muller. The agreement was the basis for the circuit court's finding that Antonic was a general contractor. Factual disputes regarding the extent of the agreement should have been brought forward when AFW moved for summary judgment against Antonic. Nambe is precluded from arguing this point, as we discuss further in the opinion.

Antonic. It is this third-party suit that is the subject of the present appeal.

AFW's complaint claimed that Antonic was not its agent, but rather the general contractor for the project. Therefore, AFW alleged that its liability was limited to the balance due to Antonic under the contract. The balance allegedly remaining to be paid under the contract was $135,237.25. Further, AFW claimed that since some of the subcontractors and suppliers had already agreed to a pro rata payment, the resulting amount actually due to Antonic on the contract was $86,317.76. AFW denied that it owed the $365,000 claimed by the various subcontractors and suppliers. Nambe filed an answer, alleging, inter alia, that Antonic was an agent of AFW, not a general contractor. Antonic also filed an answer denying that the agreement was a "general contractor's agreement" and affirmatively alleging that he acted exclusively as project manager, not as general contractor.

AFW eventually moved for summary judgment against Antonic and others and requested that the court enter judgment establishing its liability to the various third-party defendants. The motion requested that the court "grant entry of summary judgment in this action in accordance *with the demand of the complaint filed herein*" and find that the balance due under the agreement was $85,957.35. Antonic submitted a letter to the court indicating that he did not oppose the motion. While Nambe was noticed about the motion, it did not appear or in any way participate in the motion for summary judgment.

The circuit court granted summary judgment. The conclusions of law by the court established that: the agreement between Antonic and AFW was for general contracting services, AFW was only liable for the

remaining balance under the general contract and the court's conclusions were binding on all parties to the litigation. Pursuant to the judgment, the amount of $85,957.35 was placed in trust to be distributed to all the subcontractors and suppliers who had not already settled. The court later ordered judgment against AFW, in favor of Nambe, for $11,340. This represented eighteen percent of Nambe's claim. Nambe appeals from this judgment, claiming it did not have adequate notice to oppose AFW's summary judgment motion, that the court lacked personal jurisdiction over Nambe and that the court should have stayed proceedings in Wisconsin due to the ongoing proceedings in New Mexico.[2]

As a threshold question, we address whether the trial court had personal jurisdiction over Nambe. Nambe is a New Mexico corporation. The trial court found jurisdiction pursuant to Wisconsin's long-arm statute, § 801.05, STATS. Furthermore, it found that Nambe had sufficient minimum contacts with the state of Wisconsin to satisfy jurisdictional due process requirements. Nambe claims that this was error—that Nambe's "contacts with Wisconsin are too small and too strained to require Nambe to defend a claim in Wisconsin."

Whether a Wisconsin court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *See Marsh v. Farm Bureau Mut.*

---

[2] AFW argues in its response that Nambe's use, at the trial court and on this appeal, of a deposition taken in the New Mexico proceeding was improper. Because we affirm the trial court's grant of summary judgment, the point is moot and we do not address it. *See Featherly v. Continental Ins. Co.*, 73 Wis. 2d 273, 285, 243 N.W.2d 806, 815 (1976).

*Ins. Co.*, 179 Wis. 2d 42, 52, 505 N.W.2d 162, 165 (Ct. App. 1993). The determination involves a two-step inquiry. *See id.* First, do the defendant's contacts with Wisconsin subject him or her to jurisdiction under Wisconsin's long-arm statute, § 801.05, STATS.? *See Marsh*, 179 Wis. 2d at 52, 505 N.W.2d at 165. Second, does the exercise of jurisdiction conform with due process requirements? *See id.*

We construe Wisconsin's long-arm statute liberally in favor of finding jurisdiction. *See id.* Here, the trial court found personal jurisdiction based on § 801.05(5)(c), STATS., which grants a Wisconsin court jurisdiction over any action which "[a]rises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to deliver . . . within this state . . . goods . . . or other things of value." We agree with the trial court that this paragraph gives the Waukesha County Circuit Court jurisdiction over Nambe. It promised to and did deliver the muller to AFW in Waukesha, Wisconsin.

A state's exercise of jurisdiction under its long-arm statute must comport with due process requirements. *See Brown v. LaChance*, 165 Wis. 2d 52, 67, 477 N.W.2d 296, 303 (Ct. App. 1991). The due process clause permits a state to exercise jurisdiction over a nonresident defendant as long as the defendant has minimum contacts with the forum state such that "the exercise of jurisdiction does not violate traditional notions of fair play and substantial justice." *Marsh*, 179 Wis. 2d at 53, 505 N.W.2d at 166 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant corporation establishes minimum contacts by purposely availing itself of the privilege of con-

ducting business in the forum state. *See id.* The defendant's activities must be such that it could reasonably anticipate being subject to suit in the forum state. *See id.* at 54, 505 N.W.2d at 166. Finally, the cause of action may be unrelated to the foreign corporation's activities in the state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). The state may exercise general jurisdiction over a nonresident defendant based on contacts with the forum state unassociated with the claim, provided those contacts are sufficient to justify jurisdiction. *See id.* at 414 & n.9.

■

Once the court has decided that minimum contacts exist with the forum state, other factors may be considered in determining whether the assertion of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). The emphasis in this inquiry is on reasonableness. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980). Factors to be considered include: (1) "the burden on the defendant" in having to defend in a distant forum, (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* This analysis must be made with a flexible, rather than quantitative, approach. *See International Shoe,* 326 U.S. at 319.

■

We hold that Nambe has minimum contacts with Wisconsin and that the exercise of jurisdiction over

Nambe does not offend due process. Nambe has purposely availed itself of the privilege of doing business in Wisconsin: it has sold its products to retail stores in Wisconsin for at least twenty years. That Antonic traveled to New Mexico to negotiate the sale of the muller in this case does not defeat the Wisconsin court's jurisdiction over Nambe. Assuming, but not deciding, that this single sale would not justify personal jurisdiction, Nambe's other sales activities in Wisconsin still serve to establish general jurisdiction over Nambe. *See Helicopteros,* 466 U.S. at 414 & n.9. Furthermore, applying the fairness factors to the present case shows that the exercise of jurisdiction over Nambe does not offend due process principles. True, Nambe must travel from New Mexico to defend. But Nambe, by selling its products in Wisconsin, could have foreseen the possibility of suit here. Furthermore, Wisconsin has an interest in adjudicating this dispute. Seventeen of the other third-party defendants are Wisconsin corporations and the contract at the heart of this case, the Finalized Project Agreement, was negotiated and performed in Wisconsin. AFW has an interest in resolving its liability to these several third-party defendants, and the most efficient resolution of the controversy can be accomplished in Wisconsin. As the trial court noted, the proceeding in New Mexico had not progressed past threshold jurisdictional questions. For all these reasons, we say not only is it not unreasonable or unfair to require Nambe to defend in Wisconsin, it is appropriate. *Cf. Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102 (1987) (finding California's exercise of personal jurisdiction over a Japanese corporation unreasonable, unfair and violative of due process where the only remaining parties were a Japanese corporation and a Taiwanese corporation in a cross-claim

for indemnification, the burden on defendant was great, California's interest in the dispute was slight, and procedural and substantive policies of other nations were involved).

Because many of the same fairness factors come into play in our analysis of the trial court's decision not to stay the proceedings, we address that issue next.

Nambe asserts that it was error for the court to deny its motion to stay the proceedings. AFW responds that the stay was properly denied because Nambe did not comply with the procedural requirements of § 801.63(2), STATS. (stating that a motion to stay hearings must be filed before or with the answer). Nambe replies that § 801.63 does not apply in this case. According to Nambe, that section does not apply when an action has already been commenced in another state. *See Littman v. Littman,* 57 Wis. 2d 238, 245, 203 N.W.2d 901, 904 (1973). *Littman* does state that "[t]he only relief afforded to a moving party by the statute is the stay of an action pending in this state to permit the *commencement* of an action in the more convenient forum." *Id.* at 245, 203 N.W.2d at 904–05 (emphasis added). According to AFW, *Littman* is inapposite because there the stay was denied because the foreign suit involved a different defendant, not because the foreign suit was already underway. We need not decide if the time requirements of § 801.63 apply in this case because we hold, on the merits, that the trial court's denial of the stay was a proper use of discretion.

Whether to grant a stay is within the sound discretion of the trial court. *See U. I. P. Corp. v. Lawyers Title Ins. Corp.,* 65 Wis. 2d 377, 386, 222 N.W.2d 638, 643 (1974). Under the statute, the trial court is directed to consider factors such as: the amenability of the parties

to personal jurisdiction here and elsewhere, the convenience to the parties of the two competing fora, differences in rules of conflict of law, and any other factors bearing on the selection of a convenient, reasonable and fair place of trial. *See* § 801.63(3), STATS. The circuit court did take such factors into consideration. It noted that AFW might not be amenable to personal jurisdiction in New Mexico, possibly making resolution of the dispute impossible there. Here, on the other hand, it found jurisdiction over all the parties. The circuit court found it significant that jurisdictional motions in the New Mexico case, filed over a year previously, had not yet been heard. Clearly it did not feel that New Mexico was a more convenient, reasonable and fair place of trial. We cannot say that the denial of the stay was a misuse of discretion.

We now reach the main issue in this case: whether the summary judgment to AFW against Antonic precludes Nambe from arguing that Antonic was an agent of AFW rather than a general contractor. Nambe argues that it did not have an incentive to oppose the summary judgment motion against Antonic. It claims "[t]he notice of the motion did not pertain to Nambe directly and the parties could not have foreseen that the court would enter findings which would go to the very heart of Nambe's claims and which would be binding on Nambe." Further, Nambe claims that it was "never noticed that the court would be addressing issues concerning Antonic's agency status nor did they have the opportunity to litigate whether Antonic acted as an authorized agent for AFW." Finally, Nambe says, Antonic's status was never actually litigated, as the parties had reached an agreement and Antonic did not oppose the motion. AFW responds that Nambe is precluded from raising this issue, as Antonic's status as a

general contractor was established in the court's order. Nambe could have opposed the motion but did not. We agree with the circuit court that issue preclusion bars Nambe from relitigating this issue. Nambe should have asserted itself at the summary judgment stage if it felt material facts regarding Antonic's status were in dispute.

We note initially that issue preclusion normally manifests itself where the same issue arises in a subsequent action, not in the same case. Neither party, however, questioned the propriety of its application on that ground. But, in the interest of doctrinal purity, we first discuss if issue preclusion is the appropriate term of art to use when, as here, one party seeks to bar another from rearguing a prior adjudication in the same lawsuit. We conclude that the same policies support issue preclusion in the same action as in subsequent actions, and so hold that it is appropriate to apply it in the same case.

The general rule on issue preclusion is as follows:

> When an issue of fact or law is actually litigated and determined by a valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) [hereinafter RESTATEMENT], *quoted in Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 396, 497 N.W.2d 756, 762 (Ct. App. 1993). The rule was created to ward off endless litigation and ensure the stability of judgments. *See* 46 AM. JUR. 2D *Judgments* § 515 (1994). Furthermore, the rule guards against inconsistent

decisions on the same set of facts. *See id.* As shown by the RESTATEMENT quotation above, the rule usually is applied when an issue has been decided in one action and subsequently arises in a second action. However, there is nothing in the rationale behind the rule to prevent its application within the four corners of the same lawsuit.

While we are unable to find a Wisconsin case that explicitly applies issue preclusion in the same action, it has been applied, though not termed as such. *See Haase v. R&P Indus. Chimney Repair Co.*, 140 Wis. 2d 187, 191–92, 409 N.W.2d 423, 426 (Ct. App. 1987). In *Haase*, a man injured while cleaning a smokestack sued two companies which had contracted to clean and repair the smokestack. *See id.* at 189–90, 409 N.W.2d at 425–26. The trial court dismissed Haase's claim against one company, and the second company's cross-claim for contribution, finding the dismissed company not negligent as a matter of law. *See id.* at 190, 409 N.W.2d at 426. The case proceeded to trial against the remaining company, which was found negligent. *See id.* at 191, 409 N.W.2d at 426. On appeal, the company argued that the trial court had improperly excluded the negligence of the first company from the verdict. *See id.* The court of appeals disagreed, holding that the trial court's finding that the first company was not negligent was binding upon all parties to the litigation. Although not using the term "issue preclusion," the court clearly applied that doctrine. "When an issue of fact or law is actually litigated, and determined by a valid and final judgment, the determination is conclusive . . . ." *Id.* at 191–92, 409 N.W.2d at 426 (quoting RESTATEMENT § 27, entitled "Issue Preclusion—General Rule"). Finally, the court noted that a summary judgment is a final and

conclusive judgment for the purposes of issue preclusion. *See id.* at 192, 409 N.W.2d at 426.

Other jurisdictions go both ways on whether issue preclusion applies to subsequent proceedings in the same case. In *Beverly Beach Properties, Inc. v. Nelson*, 68 So. 2d 604 (Fla. 1953), the court ruled res adjudicata was inapplicable "because this is the same, not a new and different, suit." *Id.* at 607.[3] Similarly, in *Hoffman v. Blaski*, 363 U.S. 335, 340 n.9 (1960), the court declined to apply res judicata because the petitions in question were entered in the same case. However, in that case, there were further reasons to hold preclusion inappropriate: the decisions in question were neither final nor on the merits. *See id.* We find other cases more instructive. In *Hicks v. Hicks*, 176 S.W.2d 371 (Tenn. Ct. App. 1943), a man sought to modify his divorce decree so as to gain custody of his child. *See id.* at 372. The court refused to reopen the case, determining that res judicata was applicable. The court noted that:

> When a question or issue has been determined, the attempt to relitigate it is usually in a subsequent

---

[3] Res judicata, or res adjudicata, *see* BLACK'S LAW DICTIONARY 1304–05 (6th ed. 1990), normally refers to claim preclusion. *See Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995) ("The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel."). However, it is also used as an umbrella term referring to both claim and issue preclusion. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 694, 495 N.W.2d 327, 333 (1993); 46 AM. JUR. 2D *Judgments* § 516 (1994). The doctrine applicable in *Beverly Beach Properties, Inc. v. Nelson*, 68 So. 2d 604 (Fla. 1953), was law of the case. While that doctrine does not apply here since this case has not been on appeal previously, we cite the case merely to show that some courts view issue preclusion as inapplicable within the same action.

independent action or suit . . . . [B]ut it may be at a later stage of the same action or suit, as in the present case. "The effect of an adjudication as res adjudicata is not confined in its operation to subsequent independent actions or proceedings, but is equally applicable to all ancillary or collateral proceedings in the same suit, action or general proceeding."

*Id.* at 374 (quoting 2 A.C. FREEMAN, LAW OF JUDGMENTS § 627a (5th ed. 1925)); *see also Columbus Line, Inc. v. Gray Line Sight-Seeing Cos. Assoc'd,* 174 Cal. Rptr. 527 (Cal. Ct. App. 1981) (discussed *infra* pp. 309–10).

We see no reason to limit the application of issue preclusion to subsequent independent actions. The doctrine is meant to limit relitigation of issues already decided. *See Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327, 329 (1993). While historically conditioned on formalistic requirements, courts now base the decision whether to invoke the doctrine on less rigid factors. *See id.* at 687–88, 495 N.W.2d at 330. "[C]ourts balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims . . . ." *Id.* at 688, 495 N.W.2d at 330. Because this fairness rationale is not limited to subsequent and independent actions, we hold that issue preclusion can apply to subsequent proceedings within the same action. We now turn to the question of whether issue preclusion should bar Nambe's relitigation of Antonic's general contractor status in this case.

Whether issue preclusion should bar litigation in a particular situation is a decision that must be made on considerations of fundamental fairness. *See Amber J.F. v. Richard B.,* 205 Wis. 2d 510, 520, 557 N.W.2d

84, 88 (Ct. App. 1996). Our supreme court has adopted a five-part fundamental fairness test "bottomed in guarantees of due process which require that a person must have had a fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded." *Id.* In order to protect the rights of all parties, courts may consider some or all of the following factors when deciding whether to invoke issue preclusion:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment;
> (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law;
> (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;
> (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or
> (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Crozier,* 173 Wis. 2d at 689, 495 N.W.2d at 330–31 (citing "Exceptions to the General Rule of Issue Preclusion" set forth in RESTATEMENT § 28). While the weight to be given to each of these factors involves the exercise of discretion, certain of the factors present questions of law. *See Ambrose v. Continental Ins. Co.,* 208 Wis. 2d 346, 355, 560 N.W.2d 309, 313 (Ct. App. 1997), *review denied,* 211 Wis. 2d 532, 568 N.W.2d 299 (1997). The

final decision rests on the circuit court's sense of justice and equity. *See id.* at 690, 495 N.W.2d at 331 (quoting *Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 333–34 (1971)). The most important factor to be considered is fairness to the party against whom preclusion is asserted, and this fairness determination should be made on a case-by-case basis. *See Crozier,* 173 Wis. 2d at 692–93, 495 N.W.2d at 332–33. Finally, the decision whether issue preclusion applies in a particular case is one committed to the discretion of the circuit court. *See id.* at 698; *Ambrose,* 208 Wis. 2d at 355, 560 N.W.2d at 313. We thus review the circuit court's final decision on an erroneous exercise of discretion standard, reexamining de novo the questions of law implicit in that decision. *See id.* at 355–57, 560 N.W.2d at 313–14.

First, Nambe could have appealed the summary judgment finding Antonic to be a general contractor had it not waived that right. Nambe, as a named party, had every right to appear and object to the summary judgment motion. Indeed, it had the duty to do so if it wished to preserve the issue for appeal. *See First Interstate Bank v. Heritage Bank & Trust,* 166 Wis. 2d 948, 954, 480 N.W.2d 555, 558 (Ct. App. 1992) ("When a party fails to object to a circuit court's characterization of the underlying facts, that party has waived the right to argue the issue on appeal."). That Nambe waived the right to appeal does not mean that this fairness factor weighs against applying issue preclusion. This exception to the general rule of issue preclusion is meant to address those situations where review is precluded as a matter of law, such as when the law does not allow review of a particular category of judgments. *See* RESTATEMENT § 28 cmt. a. "It [the exception] does not apply in cases where review is available but is not

sought. Nor does it apply when there is discretion in the reviewing court to grant or deny review . . . ." *Id.* Here, review would have been available to Nambe had it objected and lost. But, it cannot lie in the weeds during the initial summary judgment motion only to make its attack after the fact. *See* 50 C.J.S. *Judgments* § 533 (1997) ("A judgment may not be attacked collaterally by setting up any matter which was, or might have been, raised as a defense in the original matter."). Nambe had every right to appear, object and appeal if aggrieved by the judgment. *See Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 345, 501 N.W.2d 465, 467 (Ct. App. 1993). This first factor weighs in favor of application of issue preclusion.

Second, while Antonic's status is a question of law, there are not two distinct claims here or intervening shifts in the law. The issue—Antonic's status as agent or general contractor—was the same in the first proceeding as in the second. Furthermore, there have been no significant changes in agency law that would warrant reconsideration of Antonic's status. There is no reason to apply this exception to issue preclusion in this case.

Third, there are no significant procedural differences between the court rendering the first summary judgment and the court rendering the second summary judgment. They are the same court. The third *Crozier* exception is meant to protect parties from preclusion when the proceedings in the second action differ in quality and extensiveness from the proceedings in the first. For example, an issue determined incidentally in a small claims proceeding should not be preclusive in the context of a much larger claim. *See* RESTATEMENT § 28 cmt. d. Another example of when preclusion might be inappropriate is when the second action is brought

in a different state or in federal court. *See id.* § 28 cmt. e. Here, both proceedings are in the same court and the exception is inapplicable.

Fourth, the burden of persuasion fairness factor is also inapplicable in this case. AFW, on both the first and the second summary judgment motions, had to convince the court by clear and convincing evidence that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. Because the burden remained the same, this factor does not point towards making an exception to the general rule of issue preclusion.

Fifth, there is no "clear and convincing need for a new determination of the issue." *Id.* § 28. The RESTATE-MENT, under this exception to issue preclusion, lists three reasons why a new determination might be necessary. *See id.* First, the determination might have an impact on persons not party to the initial action. Here, Nambe was a party below, as were all the other third-party defendants. Second, it may be unforeseeable in the initial action that the issue will arise in the subsequent action. Here, it was or should have been foreseeable to Nambe that its claim against AFW depended upon Antonic being AFW's agent. Antonic's agency status was clearly the issue to be determined by the summary judgment. Third, the party sought to be precluded may not have had "an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Id.* This is Nambe's main argument. But, we agree with the circuit court.

> In its brief AFW asserts 24 times that Antonic was either a general contractor to AFW, or that the contract between AFW and Antonic was for general contracting services. . . . Nambe was certainly on notice that AFW asserted that Antonic was a gen-

eral contractor and had adequate opportunity to be heard . . . . But Nambe chose not to proceed at that time for whatever reason, then allowed the Court to go ahead and make orders that affect other claimants, and it would not be fundamentally fair at this time *not* to apply issue preclusion against Nambe . . . . [Emphasis added.]

Nambe certainly knew Antonic's status was at issue. This should have been an incentive to oppose the motion.

To not apply issue preclusion in this case would encourage parties in Nambe's position to sit on their hands and wait to see what happens instead of opposing summary judgment on an issue crucial to their claims. Then, if other parties who put forth the effort to oppose fail, the waiting parties are allowed a second kick at the cat. This we will not promote by ruling in Nambe's favor. To so hold would detract from the finality of judgments. Furthermore, especially in cases like this where there are multiple defendants, such a holding would pave the way for inconsistent results. The very fact that a summary judgment motion was made alerted Nambe that someone was alleging that there were no facts in dispute. If it did not agree, it should have come forward at that time.

Illustrative for our purposes is *Columbus Line,* 174 Cal. Rptr. at 527. There, passengers on a cruise sued the ship owner, the excursion manager, the shore bus company and the bus company's trade association for personal injuries sustained in a bus accident. *See id.* at 528. The manager and ship owner filed a cross-complaint against the trade association seeking indemnity. *See id.* The trade association, claiming it was not negligent, sought summary judgment on the complaint. Summary judgment was granted. *See id.* at 529. The

309

association then sought to use this summary judgment to procure a like judgment on the cross-complaint, reasoning that if it was not negligent then it could not be liable for indemnity. The appellate court upheld the trial court's grant of summary judgment, holding that relitigation of the association's negligence was barred by collateral estoppel. *See id.* at 532.

We conclude that the circuit court properly exercised its discretion in precluding Nambe from relitigating Antonic's general contractor status. Nambe was noticed and served that AFW moved for summary judgment "in accordance with the demand of the complaint." Both the complaint and the brief in support of summary judgment were replete with allegations concerning the issue of Antonic's status as general contractor or agent. Nambe's claim against AFW depended on Antonic being an agent. If Nambe felt that fact was in dispute, it should have come forward to oppose the summary judgment. That the summary judgment motion was against Antonic and not Nambe did not relieve Nambe from the duty to come forward if it disagreed with the factual allegations relied upon by AFW in support of summary judgment. A court cannot adjudge the facts to be one way with regard to some parties to a multiparty claim and adjudge the same factual dispute another way as to other parties in the same action. That would be absurd. There can be only one finding of each historical fact per case. That the facts might be determined as a result of summary judgment is not material.

We are also somewhat troubled by Nambe's apparent claim that since the summary judgment motion came about as a result of a settlement agreement between AFW, Antonic and some of the subcontractors

310

and suppliers, the factual allegations contained within AFW's complaint were not relevant for the trial court to consider. We read Nambe's argument to be that the only real matter before the trial court at the time of the hearing on the summary judgment motion was a request for approval of the stipulated agreement on payment of claims. Thus, the summary judgment motion was not really a summary judgment motion at all, but rather a stipulated settlement and resultant dismissal of some of the parties from the case.

But Nambe was a party to the case. It was noticed and served with a motion for summary judgment, not a motion for dismissal of some of the parties by settlement. It had to know that summary judgment could not be granted unless no material issues of fact remained in dispute and it had to know the factual allegations that AFW claimed to exist. It had to know that the factual issue underlying AFW's complaint was being decided simply because that is what AFW was requesting when it wrote that it was seeking summary judgment in accordance with the demand of its complaint. As the circuit court stated, "[T]hey had fully the opportunity to litigate the issue. . . . [I]t would not be fundamentally fair at this time not to apply issue preclusion against Nambe." The circuit court correctly applied the law and exercised its discretion, and we thus affirm the judgment.

*By the Court.*—Judgment affirmed.