Duane S. Jorgensen and Sharon A. Jorgensen, Plaintiffs-Appellants,
v.
James Barber, Gary Tesch, and Mary Tesch, Defendants-Respondents,
Water Works, Inc., Defendant-(In T.CT.).
No. 03-1590.
Court of Appeals of Wisconsin.
Opinion Filed: June 10, 2004.
Before Deininger, P.J., Dykman and Vergeront, JJ.
¶1 VERGERONT, J.
This appeal, the third in this case, arises out of a dispute between, on the one side, Duane and Sharon Jorgensen, shareholders in Water Works, Inc., and, on the other side, the four other shareholders and the corporation.[1] Following a remand from this court in Jorgensen v. Water Works, Inc., 2001 WI App 135, ¶¶2-4, 11, 246 Wis. 2d 614, 630 N.W.2d 230 (Jorgensen II), the circuit court conducted a trial and awarded Duane and Sharon $13,482 in damages on their claim for breach of fiduciary duty. The Jorgensens appeal, contending that the circuit erred in: (1) construing our decision; (2) allowing the defendants to relitigate the issue of reasonable compensation; (3) permitting the defendants` expert to testify; (4) denying their motion contending that the court`s award of damages was based on a misinterpretation of one of their exhibits; and (5) not awarding prejudgment interest.
¶2 We conclude that neither the law of the case from our decision in Jorgensen II nor issue preclusion prevented the circuit court from taking new evidence, including that of the defendants` experts, or from making its own findings on damages. We also conclude that the Jorgensens are not entitled to any greater damages than those awarded by the circuit court and are not entitled to prejudgment interest. We therefore affirm.

BACKGROUND
¶3 Water Works, Inc. has owned and operated a car wash since its incorporation in 1988.[2] Disagreements between the shareholders arose in 1996, causing Duane to resign as president and director and Sharon to be removed as vice-president and director. Since 1989, each shareholder had received regular payments from the corporation. After July 1996, Duane and Sharon did not receive any payments, although the other shareholders continued to receive the regular payments.
¶4 In the first trial to the court on the Jorgensens` claim for breach of fiduciary duty,[3] the court found that, although Duane`s conduct justified the defendants removing him after he resigned, they did not act appropriately in removing Sharon. In addition, the court determined, although it was appropriate to pay salaries to the officers and directors, once the majority shareholders had removed Duane and Sharon, they had an obligation to the two to pay themselves only reasonable amounts for the services they rendered as officers and directors. The court found the regular payments were not dividends, as contended by the Jorgensens, but were payments of salaries. The court also observed that there was evidence the defendants had performed work for the corporationin some cases, "substantial work." However, the court found that the defendants had not met their burden of proving that the amount they received as officers and directors was reasonable compensation for the services they rendered to the corporation. Nonetheless, the court did not proceed to determine what amount of salaries would have been reasonable because it concluded that a challenge to the reasonableness of the officers` and directors` salaries had to be brought as a derivative action.
¶5 The Jorgensens appealed, contending that the circuit court erred in concluding that their claim for improper distributions had to be brought as a derivative action rather than as a claim by them as individuals. Jorgensen II, 246 Wis. 2d 614, ¶9. We agreed with the Jorgensens, concluding that, "based on the facts found by the circuit court ... the individual defendants breached their fiduciary duties as directors of Water Works by violating the shareholder-rights of Duane and Sharon, which caused an injury that was primarily personal to them." Id. at ¶19. We therefore reversed and "remand[ed] for further proceedings consistent with this opinion." Id.
¶6 After remand, the defendants requested substitution under WIS. STAT. § 801.58(7) (2001-02)[4] and the Honorable John Finn was substituted for the Honorable Frederic Fleishauer. The Jorgensens filed a motion to exclude the testimony of the defendants` expert, Allen Guldan, asserting that his proposed testimony on the reasonableness of the defendants` compensation was barred by the doctrines of law of the case and issue preclusion. We do not find a decision by the court on this motion, but the Jorgensens in their brief assert the motion was denied, and Guldan did testify on this topic. The parties stipulated that all the exhibits received at the first trial would be part of the record for this trial. Judge Finn made clear that the purpose of this second trial was to determine the Jorgensens` damages for the breach of fiduciary duty.
¶7 The Jorgensens` theory of damages was that they were each entitled to a continuation from July 1996, as long as the corporation was profitable, to payments equal to those regular payments the other shareholders received. In support of this theory, Duane testified that in 1989 the six shareholders, all holding equal shares, had agreed to pay out the profits to the corporation by paying an equal amount each month to each shareholder, and these payments were not for work performed. Two of the shareholders, Gary Tesch and Mary Tesch, were employed by the corporation and they received salaries in addition to the equal monthly payments of profits. Duane acknowledged that the equal payments were reflected on the books as officer`s salaries and that he and the other shareholders had received W2s reflecting these payments, but, he testified, that was only because the loan agreement the corporation had with the Small Business Administration did not allow the corporation to pay dividends until the loan was paid off. According to the calculations presented by Duane Jorgensen and Kerry Karnitz, an accountant, Duane and Sharon were each entitled to approximately $109,000 through the end of 2002. In her testimony, Sharon agreed with Duane that the equal monthly payments were based on the excess money the corporation had after the bills were paid and not based on the work she and her husband did. However, she also testified they both spent a lot of time doing things for the corporation before July 1996she thought it was more than twenty-four hours a week each, and Duane did more than she.
¶8 The Jorgensens also presented evidence of the amount of state and federal taxes they had to pay because of the income from Water Works they reported on their K-1s. Because Water Works had elected to be taxed under subchapter S of the Internal Revenue Code, its income, losses, deductions, and credits were "passed through" to each shareholder on a pro rata basis. Thus, after July 1996, as well as before, the Jorgensens, like the other shareholders, were required to report as taxable income their share of the corporation`s pass-through income (subject to a certain limitation on losses). According to exhibit 105, the total taxes the Jorgensens had to pay because of the pass-through income from Water Works for the years 1996 through 2001 was $2723.
¶9 The defendants disputed the Jorgensens' characterization of the equal payments, each testifying that those payments were compensation for the work each performed as an officer of the corporation and describing their duties, both before and after 1996. They presented an expert who opined that the payments each had received both before and after 1996 were reasonable compensation for their duties. The defendants` primary position on damages was that the Jorgensens were not entitled to any payments from the corporation after July 1996 because they performed no services for the corporation after that date, and the amounts paid the other shareholders were reasonable compensation for the tasks they performed.
¶10 There was no evidence that the defendants received any of the pro rata pass-through income reported on their K-1s or any distribution to pay the taxes on that income.
¶11 At the close of testimony, Judge Finn issued an oral decision. He began by noting his disagreement with Judge Fleishauer`s finding that the payments from the corporation were not for work performed for the corporation but, rather, were a distribution of the profits related to Water Works. Judge Finn also disagreed with our decision to the extent we relied on that finding. However, Judge Finn expressed his understanding that he was bound by the findings Judge Fleishauer had made on liability and by our decision, as law of the case, and that was the context in which he reviewed the evidence presented on damages. In Judge Finn`s view, at this trial on damages the plaintiffs had the burden of proving the amount of their damages. Because it was undisputed that the Jorgensens were not performing any work for the corporation after July 1996 and the other defendants were, Judge Finn determined the Jorgensens were not entitled to payments from the corporation equal to the payments the others received. Judge Finn found that the payments each defendant received after July 1996 were reasonable compensation for the services they were performing as officers and directors.
¶12 However, Judge Finn found the Jorgensens had proved that they had "been damaged by not receiving a share of the profits in those years [in which there had been a profit]." Judge Finn found the amount of the corporation`s profits for each year based on exhibit 105. The Jorgensens` combined share through 1999, the court found, was $13,482. Because he was uncertain whether this court in Jorgensen II intended that he determine damages as of the date of the first trial, which was held in January 2000, or the date of this second trial, Judge Finn also made a finding on their share through 2001. Because of a loss in 2000, that second finding was less: $10,867.
¶13 After the court rendered its oral decision, but before judgment was entered, the Jorgensens filed a motion to "amend judgment" to $24,841. In support, they submitted Karnitz`s affidavit averring that the amounts on exhibit 105 listed under the column "K-1s" were not the actual profits of the corporation as reflected on the K-1s, but instead took into account the "plaintiffs` income from other sources, other deductions and their entire tax position." The corporation`s actual profits, the accountant averred, were contained in the exhibit of the Jorgensens` K-1s, and the total for the years 1996 through 1999 was $24,841.
¶14 The circuit court entered judgment for the Jorgensens for $13,482 on April 8, 2003. After the judgment was entered, the court held a hearing on the Jorgensens` motion to "amend judgment" and denied the motion. The court stated that it had reviewed the record and was satisfied that it had intended to find the damages it did.

DISCUSSION

1. Law of the Case

¶15 The Jorgensens first argue that in Jorgensen II we decided they were entitled to damages in an amount equal to the payments the other shareholders received as officers and directors. Therefore, they contend, under the doctrine of law of the case Judge Finn had to award them that amount.
¶16 Under the doctrine of law of the case, a decision on a legal issue by an appellate court establishes the law of the case, which is to be followed in all subsequent proceedings in the circuit court or on later appeal, unless the evidence on a subsequent trial was substantially different or unless controlling authority has since made a contrary decision of law applicable. State v. Stuart, 2003 WI 73, ¶¶23-24, 262 Wis. 2d 620, 664 N.W.2d 82. The applicability of the law of the case doctrine presents a question of law, which we review de novo. See State v. Wurtz, 141 Wis. 2d 795, 799-800, 416 N.W.2d 623 (Ct. App. 1987).
¶17 We do not agree with the Jorgensens` characterization of the legal issues we decided in Jorgensen II. Broadly speaking, in Jorgensen II we decided that the circuit court erred in concluding that the Jorgensens` claim for improper distributions from Water Works must be brought as a derivative action rather than as an individual claim. In order to make that decision, we had to decide whether the Jorgensens had established the elements for a claim of breach of a fiduciary duty: that the defendants had violated their duties as directors to treat each shareholder fairly, causing an injury to the Jorgensens that was primarily personal to them. Jorgensen II, 246 Wis. 2d 614, ¶¶8, 10, 16. Based on the facts as found by Judge Fleishauer, we concluded that the Jorgensens had established these elements. That, then, is the legal issue we decided, stated in both the beginning and the concluding paragraphs: "based on the facts found by the circuit court ... the individual defendants breached their fiduciary duties as directors of Water Works by violating the shareholder-rights of Duane and Sharon Jorgensen, which caused an injury personal to them." Id., ¶19.
¶18 In the context of discussing whether, based on the facts found by the circuit court, the Jorgensens had been treated unfairly by the defendants and suffered an injury primarily personal to them, we observed that this unfairness manifested itself in two ways: the cessation of the regular payments to them, which the others continued to receive, and the lack of receipt of any cash flow from the corporation to the Jorgensens, even though they had to pay taxes on their pro rata share of the corporation`s pass-through income. Id., ¶18. However, we did not, as the Jorgensens assert, decide what the proper measure of damages was for the breach. That issue was simply not before us. Moreover, a ruling that the Jorgensens were entitled as a matter of law to the same payments as the other directors after July 1996 would have been flatly inconsistent with the facts as found by Judge Fleishauer: he did not find that the defendants had done no work entitling them to officer`s or director`s salaries but, rather, that they had not established that the amount they received was reasonable compensation for the work they did.

2. Issue Preclusion 

¶19 The Jorgensens next contend that the doctrine of issue preclusion precludes the defendants from relitigating whether the payments they received were reasonable compensation for the services they performed, because Judge Fleishauer had already decided they were not.
¶20 Issue preclusion, formerly known as collateral estoppel, limits the relitigation of issues that have actually been decided in a prior case. Paige K.B. v. Steven G.B., 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999). Although this doctrine is typically applied when the same issue arises in a subsequent action, we have held that it may apply to subsequent proceedings in the same action. Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank, 224 Wis. 2d 288, 304, 592 N.W.2d 5 (Ct. App. 1998). In that case, we concluded the circuit court properly exercised its discretion in applying issue preclusion to prevent a party to an action, Nambe Mills, Inc., from litigating an issue in the same action that had already been decided adversely to it by summary judgment. Id. at 310. The motion for summary judgment had been brought by another party against a third party, and Nambe had chosen not to participate in the proceeding. Id. at 306.
¶21 Precision Erecting does not answer the question whether issue preclusion is available in the procedural context herewhere there is a second trial after remand from this court at which the circuit court hears additional evidence. We review this question de novo, because it requires us to decide whether, as a matter of law, the rationale underlying issue preclusion applies in a particular procedural context. See id. at 304.
¶22 The purposes of issue preclusion include preventing endless litigation, ensuring the stability of judgments, and guarding against inconsistent decisions on the same set of facts. Id. at 301-02. We conclude that none of these rationales are served by the application of issue preclusion in this procedural context.
¶23 Our decision in Jorgensen II clearly contemplated additional proceedings in the circuit court and did not preclude the circuit court from taking additional evidence. Therefore, it was within the discretion of the circuit court whether to decide damages based on the evidence presented in the first trial or to take additional evidence. Harvest Sav. Bank v. ROI Invs., 228 Wis. 2d 733, 738, 598 N.W.2d 571 (Ct. App. 1999) (quoting Fullerton Lumber Co. v. Torborg, 274 Wis. 478, 483, 80 N.W.2d 461 (1957) (circuit court may determine any matters left open by the mandate of an appellate court in the absence of specific directions and is vested with the discretion to take such action, not inconsistent with the order of the appellate court, as seems proper under the circumstances)).[5] There is no question that Judge Fleishauer did not find the damages to which the Jorgensens were entitled. His finding that the defendants had not shown that the amount of officer`s and director`s salaries was reasonable compensation for their services suggests that he may have found the Jorgensens were entitled to a pro rata share of the difference between reasonable compensation to the officers and directors and the amounts the officers and directors actually received; but he did not make that finding. Having properly decided to take additional evidence to decide damages, Judge Finn had evidence before him that Judge Fleishauer did not have on an issuedamagesthat Judge Fleishauer did not decide. None of the purposes of issue preclusion would be served by precluding Judge Finn from making his own determination based on the evidence before him on the reasonableness of the officers` and directors` salaries for the services they performed. Indeed, we do not see any logic in requiring him to find what amount of fees would be reasonable for their services while at the same time precluding him from finding that the amounts they were paid were reasonable.

3. Guldan`s Testimony

¶24 The Jorgensens' challenge to Judge Finn`s decision to allow Guldan to testify is based on their positions on the law of the case and issue preclusion. For the reasons we have already discussed, neither doctrine prevented Judge Finn from allowing additional evidence on damages, and that includes Guldan`s testimony.

4. Denial of Motion to Change the Amount of Damages 

¶25 We next address the Jorgensens` challenge to the court`s denial of their motion to "amend judgment" by changing the amount of damages. They contend the court erred in its reading of exhibit 105 and that this error is clear from the record of the court`s oral decision on damages at the close of the trial. The defendants respond that the court`s decision on the amount of damages was reasonable and was based on the record.[6]
¶26 When we review a damage award, we sustain the award if there is any credible evidence that, under a reasonable view, supports the fact finder's determination on the amount of damages. See Ford Motor Co. v. Lyons, 137 Wis. 2d 397, 446, 405 N.W.2d 354 (Ct. App. 1987). However, whether the court employed a correct measure of damages presents a question of law, which we review de novo. Schorsch v. Blader, 209 Wis. 2d 401, 405, 563 N.W.2d 538 (Ct. App. 1997).
¶27 Exhibit 105, on which the court based the damage award, is entitled "Duane and Sharon JorgensenFederal and State Taxes on Water Works, Inc. K-1s" and consists of four columns, "K-1s," "Year," "State Tax," and "Federal Tax," with six entries under each column for the years 1996 through 2001. Karnitz testified that exhibit 105 showed that the Jorgensens paid a combined federal and state tax of $2723 because of the inclusion of the K-1 profits on their tax returns. Karnitz did not explain in his testimony how he arrived at the figures in the "K-1s" column, but they are plainly not the amount of pass-through income reported on the Jorgensens` K-1s for those years. The K-1s for the years 1996 through 2001 were also admitted into evidence (exhibit 103) and the amounts are not the same.
¶28 We agree with the Jorgensens that it appears from the court`s initial explanation of the damage award that the court mistakenly believed the "K-1s" column of exhibit 105 was the amount of the pass-through income from Water Works reported on the Jorgensens` K-1s.[7] We also agree that the court`s explanation at the motion hearing of what it had initially intended appears inconsistent with its initial explanation.[8]
¶29 Moreover, we are unable to understand under what theory of damages the figures in the "K-1s" column of exhibit 105 are evidence of damages to the Jorgensens. These figures are not the amount of pass-through income reported on the K-1s that the Jorgensens did not receive, nor do the figures represent the amount of taxes the Jorgensens had to pay as a result of the reporting of that pass-through income. Rather, the figures represent, as we understand Karnitz's affidavit, the pass-through income on the K-1s, as adjusted to reflect the amount on which the Jorgensens actually had to pay taxes based on their overall tax position. Regardless of how the amounts in this column of exhibit 105 were arrived at, we can see no relation between these amounts and a monetary loss to the Jorgensens.
¶30 However, we do not agree with the Jorgensens that they are entitled instead to their share of the corporation`s profits as reflected on the K-1s. There is no evidence that the defendants received their share of the profits as reflected on their K-1s. Therefore, the Jorgensens are not being treated differently by not receiving their shares. The payments the defendants did receive, the court found, were reasonable compensation for their services. The Jorgensens have not appealed that finding as not based on any credible evidence: their only challenges to the finding were based on law of the case and issue preclusion, which we have already rejected. As the trial court recognizes, because the Jorgensens performed no services as officers or directors after July 1996, they are not being treated unfairly if those who did provide services received reasonable compensation.
¶31 We recognize that the effect of Judge Finn`s finding that the regular payments the defendants continued to receive were reasonable compensation, coupled with the lack of evidence that the defendants received any other distribution from the corporation, is tantamount to a determination that there was no breach of fiduciary duty. The basis for this tort, at least as pleaded and argued by the Jorgensens, is the distribution by the majority shareholders of payments to themselves that the Jorgensens did not receive after July 1996. Once it is determined that those payments were reasonable compensation for services performed, there is no tort. In other words, in this tort action, liability and damages turn on many of the same factual issues, as distinguished, for example, from a negligence claim for personal injuries, where the facts establishing liability are distinct from those establishing damages. This overlap of factual issues for liability and damages, coupled with the substitution of judges, has resulted in a determination after remand that is inconsistent with Judge Fleishauer`s finding that there was a breach of fiduciary duty, the finding on which we based our decision in Jorgensen II. Although we understand this is not what the Jorgensens anticipated when they prevailed in Jorgensen II, for the reasons we have explained earlier in this decision, Judge Finn did not err in taking additional evidence and making his own finding on whether there was reasonable compensation.
¶32 Although we do not understand the basis for the damages Judge Finn did award, we do not disturb that award because the respondents did not file a cross-appeal on that issue.[9] A cross-appeal is necessary if a respondent seeks a modification of an order or a judgment appealed. WIS. STAT. § 809.10(2)(b) (2001-02).[10]

5. Prejudgment Interest

¶33 We do not agree with the Jorgensens that they are entitled to prejudgment interest. The cases they cite do not support their position. Prejudgment interest may be recovered only when damages are either liquidated or liquidable, that is, there is a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he or she owes. Teff v. Unity Health Plans Ins. Corp., 2003 WI App 115, ¶43, 265 Wis. 2d 703, 666 N.W.2d 38. One of the cases the Jorgensens cite expressly notes that generally in tort actions damages are not liquidated until they are determined. Nelson v. Travelers Ins. Co., 102 Wis. 2d 159, 163, 306 N.W.2d 71 (1981) (citing Zeidler v. Goelzer, 191 Wis. 378, 389, 211 N.W. 140 (1926). In any event, regardless of the type of action, damages are not liquid or liquidable when there are issues of fact regarding damages, Teff, 265 Wis. 2d 703, ¶50, and that was the case here.
¶34 Moreover, Nelson addressed post-verdict interest, not prejudgment interest. 102 Wis. 2d at 169-70. Without distinguishing between the two, the Jorgensens attempt to equate Judge Fleishauer`s decision to a verdict on damages. There is no merit to this argument. As we have already stated, there is no question that Judge Fleishauer did not determine damages.

CONCLUSION
¶35 We conclude that neither the law of the case from our decision in Jorgensen II nor issue preclusion prevented the circuit court from taking new evidence, including that of the defendants` experts, or from making its own findings on damages. We also conclude that the Jorgensens are not entitled to any greater damages than those awarded by the circuit court and are not entitled to prejudgment interest. We therefore affirm.
By the Court.  Judgment affirmed.
NOTES
[1] Doreen Barber, one of the shareholders, has been dismissed as a defendant. The corporation is not participating in the litigation of the claim of breach of fiduciary duty against the individual defendants.
[2] The facts in this paragraph are taken from Jorgensen v. Water Works, Inc., 2001 WI App 135, ¶¶2-4, 11, 246 Wis. 2d 614, 630 N.W.2d 230 (Jorgensen II).
[3] This first trial followed our decision in Jorgensen v. Water Works, Inc., 218 Wis. 2d 761, 582 N.W.2d 98 (Ct. App. 1998) (Jorgensen I), in which we reversed in part the summary judgment entered against the Jorgensens.
[4] WISCONSIN STAT. § 801.58(7) (2001-02) provides:

(7) If upon an appeal from a judgment or order or upon a writ of error the appellate court orders a new trial or reverses or modifies the judgment or order as to any or all of the parties in a manner such that further proceedings in the trial court are necessary, any party may file a request under sub. (1) within 20 days after the filing of the remittitur in the trial court whether or not another request was filed prior to the time the appeal or writ of error was taken.
[5] We see no indication in the record that the Jorgensens took the position after remand that the issue of damages should have been decided without taking any additional evidence, although, as we have noted above, they did object to Guldan`s testimony.
[6] The parties apparently agree that the circuit court's denial of the motion was not based on declining to consider Karnitz's affidavit after the close of evidence, but, rather, on the court's conclusion after considering the affidavit that it had intended to make the award it did. This comports with our reading of the transcript. Therefore, we consider Karnitz's affidavit as part of the record in reviewing the circuit court's decision to deny the motion for reconsideration. To the extent the defendants may be arguing that we should not consider Karnitz's affidavit on this appeal, we disagree. As we have just noted, the circuit court apparently did so before denying the motion, and that was a proper exercise of discretion. It is clear from the record that the Jorgensens submitted exhibit 105 for the purpose of showing the taxes they had to pay because of the pass-through income from Water Works, which they never actually received. At trial, the defendants did not question how the amount of taxes was calculated. The Jorgensens were not asking for damages based on either the amounts in the "K-1s" column on exhibit 105 or on the actual amounts reported on their K-1s, nor did the defendants suggest either of those amounts was an appropriate basis for damages. It was not until the circuit court made its oral ruling based on the "K-1s" column on exhibit 105 that the Jorgensens had a reason to explain how the numbers in that column were arrived at.
[7] The court`s comments are as follows:

What are they entitled to? Exhibit 105 was a  were the results from the inclusion of the K-1 on the tax return of the two plaintiffs, which is another interesting feature here that historically the corporation had issued K-1s for the distributive share of the profits and losses through a Subchapter S corporation and also did W-2s for what was agreed by everyone to be income at the time.
I think that the treatment that was unfair and that was inequitable by the defendants was the failure, the failure to actually distribute, even though they had excess  they had excess income in 1997 and 1998, they didn`t distribute that to the, to the two plaintiffs. In 1997 there was a profit of $8816 and in 1998 there was a profit of $5484. The only other year that profit was shown on the books was 2001 when there was 
And I don`t have it for 2002 because it was not in the record.
For 2001 it was $60.
And I`m looking at Exhibit 105 to, to determine those figures.
So I think that the plaintiffs are entitled to get  I think the plaintiffs have proven to the Court`s satisfaction that they`ve been damaged by not receiving a share of the profits in those years, so what I did is I took the profit for 1997  that`s $8816  plus the profit for 1998 is $5484; subtract the loss for 1996, which is $126, and subtract the loss for 1999 at $692, and that total is $13,482.
[8] The court stated at the motion hearing:

I also reviewed the transcript of the Court's decision, and after reading Mr. Karnitz's testimony, I am convinced that what I did was the appropriate thing, because Mr. Karnitz convinced me that the inclusion of this income on a K1, which really didn't go to the plaintiffs, had a tax effect, and the net tax effect over those years was as is contained in Exhibit No. 105, and the rationale being, well, if they paid the tax, they didn't get the income, so let's give them the income to support that tax effect that they had, and I had the numbers written on Exhibit 105, and I think I used the right exhibit.
The other exhibit was what would have been the actual dollar amount, but that is not what the Court intended to do. The Court looked at how the plaintiffs were damaged because the other courts had determined that there already had been a wrong committed, and this Court had to determine the damages, and the wrong was the inclusion in the K1 causing a tax effect to the plaintiffs and what sum of money needs to go in here in order to support that tax effect. I think that is consistent with the decision that I made in January of this year, so I understand the plaintiffs' position, but that's not what the Court intended to do. The Court intended to use Exhibit No. 105, because I was convinced by the witness that that was a result that had happened to the plaintiffs and that it was caused by the wrongdoings of the defendants, so I am not going to change the judgment. I think the Court's decision was appropriate, and I think it is based on the facts, based on the evidence, and the motion is, therefore, denied.
[9] The defendants did file a cross-appeal attempting to raise the issue of whether the Jorgensens had to challenge the distributions to the other shareholders by means of a derivative action. We dismissed the cross-appeal on the ground that this issue had been decided in Jorgensen II and we had no jurisdiction to review it again.
[10] Our conclusion that the Jorgensens are not entitled to damages based on their share of the profits as reflected on their K-1s makes it unnecessary to address their argument that they are entitled to those profits through the date of the trial before Judge Finn and continuously into the future.