HRUZ, J.
*469 *185 ¶ 1 Paula Grigg, as special administrator of the Estate of Raymond Grigg ("Grigg"),[1] appeals an order granting various dispositive motions in favor of Hudson Insurance Company ("Hudson Insurance") and Hudson Specialty Insurance Company ("Hudson Specialty").[2] Grigg, a business executive and shareholder until his company was sold, brought this declaratory judgment action to establish his rights under a liability policy Hudson had issued to his former company. The policy included coverage for directors and officers ("D & O") liability, which insured against *470 loss caused by "wrongful acts" committed by a person acting in his or her capacity as a director or officer of the business. Grigg challenges the circuit court's determination that Hudson had no duty to defend him in a lawsuit filed in New York.
¶ 2 Specifically, Grigg argues the circuit court improperly granted summary judgment to Hudson because the factual allegations forming the basis for the claims in the New York lawsuit, including his alleged failure to disclose certain information during the sale of his former company, plainly fault Grigg's conduct as an executive of his former company. Hudson's primary argument is that it had no duty to defend Grigg because the legal claims advanced in the New York lawsuit were expressly directed at Grigg's alleged conduct as an individual shareholder and seller of his own stock, not as a company executive.
¶ 3 Based upon our comparison of the relevant policy language with the allegations contained within the New York complaint, we conclude Hudson has failed to demonstrate it had no duty to defend Grigg. The duty-to-defend analysis turns on the facts pled, not the plaintiff's theory of liability. The factual allegations forming the basis for the claims in the New York lawsuit plainly fault Grigg's conduct as an executive of his former company (even while also faulting his conduct as a shareholder), which appears to us sufficient to trigger Hudson's duty to defend. We reach no further conclusion regarding the duty to defend because Grigg has explicitly abandoned his argument that he is entitled to a judgment as a matter of law on the duty to defend and breach issues.
¶ 4 As a corollary, we hold that a third-party complaint does not eliminate a defendant's liability insurance coverage by purportedly limiting its legal *471 claims to acts or omissions the defendant-insured made in a non-covered capacity, when those same alleged acts or omissions were also made in a covered capacity. In such "concurrent capacity" cases, the insured is entitled to a defense from the insurer if the alleged facts supplying the basis for the claims arguably involve acts or omissions falling within the scope of coverage.
¶ 5 We also reject several other arguments Hudson advances in support of the *186 circuit court's decision. First, we conclude that, given the state of the record, Hudson Insurance was not properly dismissed as a party. Second, we conclude that, even assuming Grigg failed to provide Hudson with a timely notice of claim, he has satisfied his burden of showing Hudson was not prejudiced by the delay. Third, we reject Hudson's argument that issue preclusion bars Grigg from pursuing the present appeal against Hudson. Hudson provides no applicable legal authority for its assertion that Grigg cannot appeal the circuit court's determination as to Hudson without also maintaining an appeal against other defendants concerning Grigg's claims for indemnification and insurance coverage from those entities.
¶ 6 In all, we conclude Hudson has failed to demonstrate it was entitled to summary judgment as a matter of law. We therefore reverse the grant of summary judgment and remand this matter to the circuit court for a determination of whether Hudson had a duty to defend Grigg and other further proceedings. If, as it appears to us, Hudson did have such a duty and breached that duty, the circuit court must hold further proceedings to determine any damages that may have resulted from that breach.
*472 BACKGROUND
¶ 7 This case arises from a complex business transaction and various, subsequent litigation. In 2010, J.H. Whitney Capital Partners, LLC ("J.H. Whitney"), a Connecticut private equity firm, acquired Aarrowcast, Inc. ("Aarrowcast"). Aarrowcast is a foundry business located in Shawano, Wisconsin; it manufactures gray and ductile iron castings for government, defense, agricultural and manufacturing purposes. J.H. Whitney owned the vast majority of Aarrowcast's authorized and outstanding shares of stock through its subsidiary holding companies, JHW ACast, LLC ("JHW") and Aarrowcast Holdings, LLC ("Aarrowcast Holdings").[3] The remaining shares were owned by members of Aarrowcast's management team and board of directors.
¶ 8 IOP Cast Iron Holdings, LLC ("IOP") purchased Aarrowcast on August 14, 2014, from Aarrowcast Holdings and Aarrowcast's other shareholders, including Grigg.[4] At the time of the sale, in addition to being a shareholder, Grigg was Aarrowcast's chief *473 executive officer and a member of the company's board of directors. IOP's purchase of Aarrowcast was memorialized by a stock purchase agreement dated August 4, 2012. Grigg was a signatory to this agreement under the heading "Rollover Seller." It is undisputed Grigg did not sign the stock purchase agreement on Aarrowcast's behalf, but rather as a seller of his own stock.
¶ 9 Subsequent to its acquisition of Aarrowcast, IOP discovered information that *187 caused it to suspect it had been misled about the company's sales projections during the negotiations leading to the purchase. On December 2, 2013, IOP sent a demand letter to Aarrowcast Holdings, in care of J.H. Whitney, requesting indemnification for alleged damages attributable to false or inaccurate representations and warranties in the stock purchase agreement. Specifically, the demand letter accused Aarrowcast, Aarrowcast Holdings, and the other selling shareholders of failing to disclose that Aarrowcast's largest customer planned to substantially reduce its orders.
¶ 10 Grigg and other members of Aarrowcast's management team responded to IOP's demand letter with their own letter to Aarrowcast and Aarrowcast Holdings on January 21, 2014. The management team asserted they were, at all times during IOP's acquisition, acting within the scope of their employment. They also asserted that Aarrowcast maintained insurance policies containing D & O coverage that could potentially apply to IOP's claims. Accordingly, the management team requested that Aarrowcast immediately notify its D & O insurers of IOP's claims "[t]o avoid any prejudicial delay with respect to the insurer(s)' right to *474 prompt notice of facts and circumstances relating to any claim."[5] It is undisputed that either Hudson Insurance or Hudson Specialty had issued to Aarrowcast an insurance policy that included D & O coverage.[6]
¶ 11 In late 2014, IOP filed an amended complaint in the United States District Court for the Southern District of New York. That action had been filed against J.H. Whitney, JHW, and Aarrowcast Holdings. The amended complaint asserted those defendants had, during the purchase negotiations, sold IOP on a "growth story," when in fact Aarrowcast knew prior to closing that key customers were planning to significantly reduce their orders. Although Grigg was not named as a defendant in that lawsuit, IOP specifically alleged he knew prior to the transaction's closing that orders from Aarrowcast's largest customer would significantly diminish. IOP asserted the defendants' failures to disclose the adverse sales information breached the stock purchase agreement and constituted common law fraud.
¶ 12 The parties to the Southern District of New York litigation subsequently settled that lawsuit. On September 21, 2015, they entered into a joint stipulation for dismissal with prejudice that released J.H. Whitney, JHW, and Aarrowcast Holdings from any *475 liability for the claims alleged. Grigg was not included in the release, and IOP remained free to pursue its claims against him.
¶ 13 Believing he was intentionally "cut ... out of the release" contained within the joint stipulation, Grigg preemptively filed the present lawsuit in Shawano County, Wisconsin, on October 12, 2015. The complaint initially named IOP, Aarrowcast, Hudson Specialty, and Axis Insurance Company ("Axis") as defendants. Grigg alleged that although Aarrowcast had notified its insurance carriers-Hudson Specialty and Axis-of Grigg's demand for coverage, neither insurer had accepted *188 coverage, tendered a defense, or reimbursed Grigg for any defense costs. Grigg therefore asserted Hudson Specialty and Axis had breached their contractual duties under the relevant insurance policies to defend him.[7]
¶ 14 Shortly after Grigg filed the present action, IOP commenced a new state-court action against Grigg in New York (the "New York state litigation"). The factual allegations in the New York state litigation were generally the same as those that had been asserted in the Southern District of New York litigation. That is, IOP alleged Grigg made false representations and warranties regarding Aarrowcast's sales information in connection with Aarrowcast's sale to IOP. IOP's claims against Grigg were for breach of the stock purchase agreement and common law fraud. Notably, in its complaint, IOP purported to bring suit *476 against Grigg only "in his capacity as a shareholder but not as an officer and director."
¶ 15 Meanwhile, Hudson Insurance answered Grigg's complaint on Hudson Specialty's behalf, asserting that Hudson Specialty had not issued the relevant policy and had been wrongly named as a party. Grigg then filed an amended complaint adding Hudson Insurance as a party. Hudson again answered, but this time denied that Hudson Insurance was a proper party. Instead, the answer admitted that Hudson Specialty had issued a policy containing D & O liability coverage to Aarrowcast. Hudson claimed its initial assertion that Hudson Insurance was the proper party was a mistake. Hudson Insurance then filed a motion to dismiss it as a party on the basis that it had not issued an insurance policy to Aarrowcast.
¶ 16 Grigg and Hudson Specialty filed cross-motions for declaratory judgment regarding Hudson Specialty's alleged duty to defend Grigg in the New York state litigation.[8] Grigg argued that despite IOP's attempt to limit Grigg's liability to his acts as an individual shareholder, IOP's complaint in the New York state litigation had effectively alleged that Grigg had committed misconduct while acting in his capacity as an Aarrowcast executive and that he was therefore entitled to coverage. Hudson Specialty, on the other hand, argued Grigg was not entitled to a defense under its D & O policy because IOP's complaint had not alleged Grigg was liable for anything he had done as an Aarrowcast officer or executive. Rather, Hudson Specialty emphasized IOP's allegation that it was making claims against Grigg only in his capacity as a *477 seller of his individual stock. Hudson Specialty alternatively argued Grigg had failed to provide a proper notice of the claim.
¶ 17 At a motion hearing, the circuit court ruled in favor of Hudson Specialty. Although the court acknowledged that Grigg was only alleged to have learned of the negative future sales information through his position as an Aarrowcast officer, it nonetheless concluded IOP's claims against him in the New York state litigation arose solely by virtue of his alleged acts or omissions as an individual shareholder and seller of stock. Accordingly, the court determined Hudson Specialty's defense duties were not triggered. Although *189 the court did not directly address at the hearing Hudson Insurance's argument that it was not a proper party, the court apparently accepted this argument and granted Hudson Insurance's motion to dismiss.
¶ 18 At the hearing, the circuit court also resolved various motions that disposed of the other parties in the Shawano litigation. IOP and Aarrowcast had filed a joint motion to dismiss the amended complaint on procedural and substantive grounds, which the circuit court granted. Grigg, in conjunction with his motion for declaratory judgment against Hudson Specialty, had also filed a motion for declaratory judgment against Axis, claiming it too was required to indemnify him. The circuit court denied that motion and granted judgment to Axis, dismissing all of Grigg's claims against it. Although Grigg's notice of appeal identified these determinations as matters for appeal, he subsequently settled with IOP, Aarrowcast, and Axis, and Grigg voluntarily dismissed his appeal as to *478 those parties. Thus, only the circuit court's determinations regarding Hudson are under review in this appeal.
¶ 19 Grigg filed a motion for reconsideration, challenging, among other things, the circuit court's decision to grant summary judgment in Hudson's favor. Grigg's brief in support of his reconsideration motion quoted extensively from IOP's complaint in the New York state litigation, emphasizing several paragraphs in which IOP specifically mentioned Grigg's duties as Aarrowcast's chief executive officer and that he learned of the adverse sales estimates in that capacity. The most notable of these paragraphs-paragraph 48-alleged that, "[a]s Chief Executive Officer of the Company, it was incumbent upon Grigg to immediately make known to the [sic] IOP Holdings the material information regarding the foreseen pending declines in Company performance."[9] Grigg asserted that, taken in its totality, the IOP complaint "necessarily and exclusively" implicated Grigg's actions as an officer and director, and the facts pled "involve[d] actions that occurred prior to the sale, when Grigg owed no duty to IOP as a minority shareholder."
¶ 20 Hudson opposed the reconsideration motion, which the circuit court ultimately denied. Grigg now appeals the court's determination regarding Hudson's duty to defend him in connection with the New York state litigation.
*479 DISCUSSION
¶ 21 As an initial matter, Hudson appears to argue we should apply Connecticut law in some fashion. Its argument-relegated to a footnote in its response brief-is that although Aarrowcast is located in Wisconsin, the insurance policy was issued to Aarrowcast Holdings, Inc., in Connecticut, and therefore Connecticut law should apply to the extent there is any conflict with Wisconsin law.
¶ 22 However, "[t]he threshold determination in a conflict of laws case is whether a genuine conflict exists." Gavers v. Federal Life Ins. Co. , 118 Wis. 2d 113, 115, 345 N.W.2d 900 (Ct. App. 1984). Because Hudson merely raises the specter of such a conflict, but fails to elaborate upon what (if any) conflicting principles of law are relevant to this appeal, we assume Wisconsin law applies. See *190 Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc. , 2004 WI App 134, ¶ 16, 275 Wis. 2d 349, 685 N.W.2d 564 (holding the court of appeals will not ordinarily address undeveloped arguments).
¶ 23 Grigg's appeal is a challenge to the circuit court's ruling on cross-motions for summary judgment. We review a grant of summary judgment de novo, using the same, well-established methodology as the circuit court. Jones v. Baecker , 2017 WI App 3, ¶ 23, 373 Wis. 2d 235, 891 N.W.2d 823 ; see also Palisades Collection LLC v. Kalal , 2010 WI App 38, ¶ 9, 324 Wis. 2d 180, 781 N.W.2d 503 (stating the summary judgment methodology). Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the *480 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2015-16).[10]
¶ 24 The central question in this appeal is whether Hudson has established as a matter of law that it did not have a duty to defend Grigg against IOP's claims in the New York state litigation. Neither Grigg nor Hudson contends there are any disputed issues of material fact regarding this issue, at least regarding the issue of IOP suing Grigg in his capacities as either shareholder or an officer or director. For the reasons that follow, we conclude the factual allegations contained in IOP's complaint were sufficient to state a claim against Grigg for actions he took or failed to take in his capacity as an insured officer or director of Aarrowcast. We therefore conclude Hudson failed to demonstrate that it was entitled to judgment as a matter of law. It follows that the circuit court erred by granting Hudson summary judgment.
¶ 25 Hudson also presents other arguments supporting the circuit court's decision, irrespective of whether Hudson had a duty to defend Grigg. Hudson argues that: (1) Hudson Insurance is not a proper party; (2) Hudson received untimely notice of Grigg's claim; and (3) Grigg's claims against Hudson should be dismissed based on issue preclusion relating to Grigg's settlement with, and the subsequent the dismissal from this appeal of, the other defendants to this lawsuit. We reject these arguments and remand to the circuit court for further proceedings consistent with this opinion, including a determination of whether *481 Hudson had a duty to defend Grigg. If, as we believe, there was such a duty, the circuit court must ascertain whether Hudson breached that duty and what damages Grigg sustained as a result of that breach.
I. Duty to Defend
A. Relevant General Principles
¶ 26 To ascertain an insurer's duty to defend, we interpret the applicable insurance contract, which presents a question of law that we review de novo. Marks v. Houston Cas. Co. , 2016 WI 53, ¶ 36, 369 Wis. 2d 547, 881 N.W.2d 309. "The same rules of construction that govern general contracts are applied to the language in insurance policies." Folkman v. Quamme , 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. If the meaning of the policy language is clear, we apply that language as written. Id. , ¶ 13.
¶ 27 Whether an insurer has a duty to defend its insured against a lawsuit is determined using the "four-corners rule." Marks , 369 Wis. 2d 547, ¶ 39, 881 N.W.2d 309. The rule is so named because *191 the duty to defend is triggered by comparing the policy language against the allegations contained within the four corners of the complaint. Estate of Sustache v. American Family Mut. Ins. Co. , 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845. Thus, only two documents are relevant to the determination of the duty to defend: the insurance policy and the complaint against the insured.[11] Marks , 369 Wis. 2d 547, ¶ 39, 881 N.W.2d 309. *482 ¶ 28 Our supreme court has repeatedly stated that the "four-corners rule" is designed for the insured's protection. See, e.g. , id. , ¶ 41 ; Estate of Sustache , 311 Wis. 2d 548, ¶ 21, 751 N.W.2d 845. Without such a rule, insurers could refuse to defend in the hopes that the facts ultimately proved in the litigation would reveal that there was no coverage. Marks , 369 Wis. 2d 547, ¶ 41, 881 N.W.2d 309 (citing Olson v. Farrar , 2012 WI 3, ¶ 32, 338 Wis. 2d 215, 809 N.W.2d 1 ). The four-corners rule generally "ensure[s] that insurers do not frustrate the expectations of their insureds by resolving the coverage issue in their own favor while coverage remains fairly debatable." Baumann v. Elliott , 2005 WI App 186, ¶ 10, 286 Wis. 2d 667, 704 N.W.2d 361.
¶ 29 To achieve this purpose, an insured benefits from several interpretive rules that govern our review of the insurance policy and the complaint. In general, we resolve any doubt regarding the duty to defend in the insured's favor. Fireman's Fund Ins. Co. of Wis. v. Bradley Corp. , 2003 WI 33, ¶ 20, 261 Wis. 2d 4, 660 N.W.2d 666. Specifically, our supreme court has "consistently explained that a court must liberally construe *483 the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured." Water Well Sols. Serv. Grp. v. Consolidated Ins. Co. , 2016 WI 54, ¶ 15, 369 Wis. 2d 607, 881 N.W.2d 285. In addition, if an insurance policy provides coverage related to even one claim made in the lawsuit, the insurer must defend the entire action. Fireman's Fund Ins. Co. , 261 Wis. 2d 4, ¶ 21, 660 N.W.2d 666. Importantly, "[t]he coverage need only be arguable or fairly debatable" to trigger the duty to defend. Southeast Wis. Prof'l Baseball Park Dist. v. Mitsubishi Heavy Indus. Am., Inc. , 2007 WI App 185, ¶ 42, 304 Wis. 2d 637, 738 N.W.2d 87.
B. The Hudson Policy
¶ 30 Hudson issued to Aarrowcast a policy entitled "Private Defender (Management Liability Insurance Policy)." As relevant here, the policy includes provisions that grant coverage for certain executive and employee liability:
[T]he Insurer will pay Loss on behalf of an Insured Person , which such Insured Person has become legally liable to pay as a result of a Claim first made against them during the Policy Period or Discovery Period , if applicable, for a *192 Wrongful Act that takes place during or prior to the Policy Period .
Elsewhere, the policy provides that with respect to the policy's liability provisions, Hudson "shall have the right and duty to defend any Claim for which the Insureds give notice to the Insurer, even if such Claim is groundless, false or fraudulent."
¶ 31 The policy's bolded terms are separately defined. On appeal, there does not appear to be any *484 dispute that IOP has made a "claim" against Grigg. An "Insured Person" means an "Insured Executive" or an "Employee," both of which terms are themselves separately defined. For our purposes, it also appears undisputed that Grigg qualified as an "Insured Executive," which includes any "past, present or future duly elected director, duly appointed officer or duly elected or appointed member of a board of managers" of Aarrowcast.[12]
¶ 32 The parties also focus on the term "Wrongful Act," the meaning of which is critical to this lawsuit. As relevant here, that term means an "error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed by an Insured Person in their capacity as such." Hudson's principal argument is that IOP's complaint in the New York state litigation failed to allege that Grigg committed any covered act or omission "in his capacity as" a director or officer of Aarrowcast. We therefore pivot to the allegations contained in that complaint.
C. IOP's New York State Complaint
¶ 33 IOP's complaint in the New York state litigation advanced claims for breach of contract and common law fraud "based on false representations and warranties in a written stock purchase agreement."
*485 Paragraph one of the complaint observed that at the time of the sale, Grigg "served as the Chief Executive Officer of Aarrowcast." However, the first paragraph declared IOP "brings this action against Grigg in his capacity as a shareholder but not as an officer and director."
¶ 34 The remainder of paragraphs one through five set forth the "nature" of IOP's action. As relevant here, the facts alleged include IOP's purchase of Aarrowcast, that Grigg was an individual signatory to the stock purchase agreement, and that the agreement contained a series of representations and warranties that the sellers (including Grigg) were making. The complaint alleged that, among other things, Grigg represented and warranted that: (1) none of Aarrowcast's material customers "has any plan or intention to terminate, cancel or otherwise materially and adversely modify its relationship with [Aarrowcast] or its Subsidiaries"; and (2) "no party has given written notice of any significant dispute with respect to any Material Contract." IOP also alleged the breach of a representation and warranty that the sales projections given to IOP during the acquisition negotiations were a "good faith estimate of future financial performance."
¶ 35 According to IOP, these representations and warranties were false. IOP alleged Grigg knew weeks prior to the sale, at a minimum, that business was plummeting, that Aarrowcast's largest customer had demanded to renegotiate its contract with Aarrowcast, and that several of Aarrowcast's largest customers had told Aarrowcast *193 that they "expected orders to fall precipitously." IOP alleged it had suffered damages in excess of $30 million and that its lawsuit against Aarrowcast's former majority shareholder and related entities in the Southern District of New York had been *486 settled in a manner that "expressly exempted IOP Holdings' claims against Grigg."
¶ 36 IOP's complaint in the New York state litigation contained extensive allegations regarding Aarrowcast's business and sales practices, its customer base and contract structure with its customers, and the details of IOP's negotiations and acquisition process. The complaint also detailed IOP's investigation in response to "plummeting" sales and its discovery of information that led it to believe it had been misled during negotiations.
¶ 37 Portions of the complaint focused on Grigg's conduct during the acquisition process. For example, IOP alleged Grigg directly participated in a management presentation to IOP, during which he made statements emphasizing Aarrowcast's growth potential. Based on materials discovered during its investigation, IOP alleged Grigg "knew or should have known before the sale that [Aarrowcast's largest customer] was having significant excess inventory problems and needed to renegotiate its take-or-pay contract." This allegation appears to have been based on an email Grigg sent to Aarrowcast senior management prior to closing, in which he noted his concern with Aarrowcast's largest customer's contract and stressed "establishing a Plan B in the anticipation that orders will fall off." IOP also alleged that Grigg received a phone call from an Aarrowcast senior vice president advising him that the company's largest customer "had requested material and adverse changes" to its contract.
¶ 38 Grigg contends the complaint set forth facts that faulted his conduct while serving his role as an Aarrowcast officer and director, thereby entitling *487 him to a defense under Aarrowcast's policy with Hudson. Specifically, he focuses on paragraph 48, which states as follows:
As Chief Executive Officer of the Company, it was incumbent upon Grigg to immediately make known to ... IOP Holdings the material information regarding the foreseen pending declines in Company performance, particularly as he was aware that the Company was in the process of being acquired and such information necessarily would impact the acquisition. Instead, rather than making known such information, he forecasted and participated in forecasting continued strong business performance with knowledge that the forecasts he was giving were not accurate. That inaccurate information was relied upon by shareholders and interested parties and was a key representation necessary to secure the closing of the Agreement.
IOP's claims for breach of the stock purchase agreement and common law fraud realleged and incorporated all the foregoing allegations, including paragraph 48.
D. Hudson Was Not Entitled to Judgment as a Matter of Law Regarding Its Duty to Defend
¶ 39 Grigg argues the four-corners rule, together with its ancillary interpretive principles that operate in favor of the insured, triggered Hudson's duty to defend. According to Grigg, the IOP complaint "plainly and directly alleges a factual basis for liability arising out of [Grigg's] official capacity as President and Chief Executive Officer (officer and director) of Aarrowcast." We agree with Grigg that Hudson has failed to establish it was entitled to judgment as a matter of law regarding its alleged duty to defend.
*488 *194 ¶ 40 The facts alleged in IOP's complaint show it was arguably seeking to hold Grigg liable for conduct he undertook while serving as an Aarrowcast officer and director. The complaint is replete with allegations that Grigg acted wrongfully in his capacity as an Aarrowcast executive, including by making "growth" statements to IOP during a management presentation and by concealing (or, at least, not disclosing) adverse sales forecasts during the acquisition process, prior to the time he signed the stock purchase agreement. This conduct is particularly relevant as to IOP's claim for common law fraud, which is not a claim that might be reliant on whether Grigg signed the Stock Purchase Agreement on behalf of Aarrowcast versus only on his own behalf.
¶ 41 Most problematic for Hudson, though, is the aforementioned paragraph 48, in which IOP directly took issue with Grigg's performance as an Aarrowcast executive. In that paragraph, IOP specifically alleged that Grigg, while acting as Aarrowcast's chief executive officer, had a duty "to immediately" disclose to IOP his knowledge of the adverse sales projections and information. This allegation can be reasonably read as asserting that Grigg had a legal duty as an Aarrowcast executive to disclose the revised sales forecasts, which duty necessarily existed prior to his signing the stock purchase agreement and independent of any of his duties as an individual selling his own stock shares.
¶ 42 Nonetheless, Hudson declares that IOP "does not seek to hold Grigg liable for breaching a duty he might have owed as Aarrowcast's CEO." Hudson places dispositive weight on IOP's allegation that it is not pursuing a claim against Grigg for his conduct as a director or officer. Rather, because IOP's legal claims *489 were based solely on Grigg's alleged breached of his duties pertaining to the stock purchase agreement, which he signed in his individual capacity, Hudson argues the complaint cannot be read to state an arguably covered claim.
¶ 43 Hudson's argument places too much emphasis on the nature of IOP's legal claims as opposed to the complaint's factual allegations, including those regarding Grigg's alleged wrongdoing. For duty-to-defend purposes, the sufficiency of the facts pled-not a plaintiff's attribution of those facts to a particular legal theory-controls the determination of whether a claim for relief has been properly pled. Strid v. Converse , 111 Wis. 2d 418, 422-23, 331 N.W.2d 350 (1983) ; Jost v. Dairyland Power Co-op. , 45 Wis. 2d 164, 169-70, 172 N.W.2d 647 (1969). If the alleged facts reveal an apparent right to recover under any legal theory, they are sufficient as a cause of action. Jost , 45 Wis. 2d at 169-70, 172 N.W.2d 647.
¶ 44 These principles were aptly applied in the duty-to-defend context by the United States Court of Appeals for the Seventh Circuit in Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc. , 43 F.3d 1119 (7th Cir. 1994). In that case, applying Wisconsin law, the Seventh Circuit rejected the district court's conclusion that the insurer's duty to defend had not been triggered because the complaint against the insured ambulance company had not used the words "unfair competition." Id. at 1122. In so holding, the Seventh Circuit observed:
The insurer's obligations are not circumscribed by the plaintiff's choice of legal theories. The plaintiff's complaint, upon which the insurer's duty depends, need *490 not even set forth the plaintiff's legal theories. What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least ar guably within one or more of the categories of wrongdoing that the policy covers *195 .
Id. (citations omitted) (emphasis added).[13]
¶ 45 Here, as we have previously explained, the alleged facts are such that, regardless of IOP's explicit intent to limit its lawsuit, Grigg's complained-of conduct "is at least arguably within one or more of the categories of wrongdoing that the policy covers." See id. IOP's attempt to restrict the scope of its claim to a violation of Grigg's duties as an individual signatory-despite including a plethora of allegations that arguably state a claim against him in his former, official capacity-is akin to a legal conclusion, which need not be accepted or taken as true. See Data Key Partners v. Permira Advisers LLC , 2014 WI 86, ¶¶ 9, 21, 356 Wis. 2d 665, 849 N.W.2d 693.
¶ 46 Hudson also accuses Grigg of reading the complaint too narrowly, focusing on paragraph 48 to the exclusion of the complaint's other allegations. As Hudson correctly observes, we must consider the complaint as a whole, and we do not isolate singular allegations. See *491 Shelstad v. Cook , 77 Wis. 2d 547, 555, 253 N.W.2d 517 (1977) ("[T]he nature of the action must be determined as a whole and all allegations in the complaint may be considered."); Yao v. Chapman , 2005 WI App 200, ¶ 39, 287 Wis. 2d 445, 705 N.W.2d 272. But contrary to Hudson's argument, our interpretation of the complaint as stating a claim against Grigg in his official capacity is faithful to this rule. We are asked to reconcile substantial factual assertions arguably stating a claim against Grigg in his official capacity with a single statement by the plaintiff that it intends not to bring such a claim. Under these circumstances, the underlying plaintiff's desire to limit its legal claims must yield to the facts alleged.
¶ 47 Hudson also argues Grigg has misconstrued IOP's complaint. Hudson observes that IOP's common law fraud allegations referred specifically to the complaint's previous paragraphs in which IOP highlighted the stock purchase agreement provisions Grigg was alleged to have breached. In Hudson's view, this allegation had the effect of stating a fraud claim against Grigg only to the extent Grigg's conduct as an individual signatory also constituted a breach of the stock purchase agreement.
¶ 48 Like Hudson's previous argument, this argument slices the complaint too thin for purposes of determining insurance coverage. The majority of IOP's factual allegations in connection with its common law fraud claim-including that Grigg's alleged false statements and omissions induced IOP to enter into the purchase agreement-apply equally to Grigg as an individual shareholder and as an Aarrowcast executive. See Kaloti Enters. v. Kellogg Sales Co. , 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205 (setting forth the elements necessary to prove an intentional misrepresentation claim). In other words, Grigg's conduct *492 occurred while he was performing both roles concurrently. Notably, other than by citing IOP's conclusory allegation regarding its desired scope of liability, Hudson never explains how the complaint fails to state a claim against Grigg for conduct he undertook while acting in his official capacity, or what type of allegations *196 IOP would have needed to add to state such a claim.
¶ 49 Rather, Hudson dismisses as "background" the complaint's factual allegations regarding Grigg's conduct while acting as an Aarrowcast executive. Hudson theorizes that these allegations were included only to demonstrate Grigg had access to, and knowledge of, the information that he then failed to disclose. Relatedly, Hudson also asserts Grigg has admitted IOP's claims against him are based only on the stock purchase agreement.[14] Be all this as it may, these arguments are inapt in light of the pleading rules and four-corners principles discussed above. IOP's reasons for including the extensive allegations regarding Grigg's duties and conduct in his role as a company executive are immaterial to our coverage determination, as is Grigg's acknowledgment of IOP's legal theory.
¶ 50 Hudson's arguments are also misdirected in light of the purposes of liability insurance coverage, especially in the context of an individual who was undisputedly making the same allegedly wrongful acts or omissions while simultaneously wearing "two hats." Occasionally, as in Grigg's case, a person is making acts or omissions both in his or her individual capacity (such as a shareholder) and in a capacity (such as an *493 officer or director) in which he or she owes fiduciary duties to a company that itself is a party to the transaction. In such "concurrent capacity" cases, that person might face liability to a third party for his or her acts or omissions being "made" in both capacities, and, at the time of his or her act or omission, he or she cannot divorce either the two capacities or the risk of liability associated with each of them. Furthermore, an individual might not be able to separate out his or her insured role from his or her uninsured role when deciding which acts or (as here) disclosures to make.
¶ 51 For all of the foregoing reasons, we conclude as follows: when an individual's complained-of conduct-and the facts a third party alleges in a complaint related thereto-is undertaken pursuant to two or more concurrent capacities, one of which is covered by an insurance policy, the insurer must provide a defense when it is initially tendered.
¶ 52 We find persuasive the primary case on which Grigg relies, Heffernan v. Pacific Dunlop GNB Corp. , 965 F.2d 369 (7th Cir. 1992). In Heffernan , a corporate director and minority shareholder (Heffernan) sold his business interests as part of a larger transaction in which Pacific Dunlop GNB obtained a controlling interest in his former companies. Id. at 371. Pacific later sued to rescind the transaction based on the alleged inadequate disclosure of certain of the companies' liabilities, and Heffernan sought indemnification and an advance on his litigation expenses from his former companies. Id. The companies refused, and Heffernan initiated a lawsuit to establish his rights. Id.
¶ 53 Heffernan acknowledged he had been sued "over a transaction in which he sold his own stock," but he nonetheless argued the suit also implicated his *494 status as a director of his former companies. Id. at 372. The companies, however, asserted "that Pacific's complaint against Heffernan ha[d] nothing whatsoever to do with Heffernan's former status as a director." Id. The federal appellate court agreed with Heffernan, observing "the substance of Pacific's *197 allegations and the nature and context of the transaction giving rise to the complaint indicate that Heffernan may have been sued, at least in part, because he was a director of [his former companies]." Id. Our analysis mirrors that of the Heffernan court: we cannot simply ignore the abundance of allegations in IOP's complaint that implicate Grigg's conduct as an Aarrowcast executive, even if IOP only sought to recover for Grigg's conduct as an individual shareholder.[15]
¶ 54 The primary case Hudson cites does not persuade us differently. In that case, a business executive who was also a shareholder of a company claimed he had suffered "loss" under an insurance policy. ClearOne Commc'ns, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA , 494 F.3d 1238, 1242-43, 1252-53 (10th Cir. 2007). The loss allegedly occurred because of a settlement agreement with other shareholders, which settlement related to claims regarding false *495 financial reporting that required the company to issue over one million additional shares. Id. The United States Court of Appeals for the Tenth Circuit concluded the dilution of the executive's ownership stake in the company was "attributed to his status as a major shareholder" and did not "relate to or implicate [the executive's] financial or legal liability as a director." Id. at 1253. Unlike the executive in ClearOne Communications , Grigg is not seeking coverage for anything akin to an alleged diminution in the value of his ownership interest; he is a defendant in the New York state litigation, seeking coverage for claims against him that implicate his alleged misconduct while acting as a director and officer of Aarrowcast.
¶ 55 Hudson also argues that Marks is in some way dispositive of this case. In Marks , the plaintiff was the trustee of two trusts that held a controlling interest in Titan Global Holdings, Inc. Marks , 369 Wis. 2d 547, ¶ 4, 881 N.W.2d 309. Marks was implicated in several business lawsuits against Titan and other companies, none of which materially involved Marks' positions as trustee. Id. , ¶¶ 10-17. Marks was insured in his capacity as a trustee, and he subsequently sued his insurer alleging it had breached its duty to defend Marks in each of the business lawsuits. Id. , ¶ 19.
¶ 56 One of Marks' appellate arguments was that he should be entitled to insurance coverage because the trusts held a controlling interest in Titan and he had only accepted a seat on the Titan board of directors to manage that investment. Id. , ¶ 52. Our supreme court was not persuaded, concluding that any "causal relationship" between the trusts and Titan was insufficient to overcome the fact that Marks was being "sued for his alleged failures as officer or director of Titan, not for any alleged failures as trustee of [the *496 trusts]." Id. Hudson reasons from this statement that there is no duty to defend here because Grigg, like Marks, is being sued only in his non-insured capacity. However, our supreme court was quite clear that the lawsuits in which Marks was named a party "had nothing to do with Marks' services as trustee of those trusts." *198 Id. , ¶ 54. Indeed, it is not clear that Marks even had the capability to undertake the complained-of acts-all of which related to his performance as an officer or director of various business entities-in his insured capacity as trustee. The relevant complaints did not discuss the trusts at all. Id. , ¶ 51. As such, Marks is distinguishable as it is not a "concurrent capacity" case, and it does not control our disposition here.
¶ 57 In sum, the facts alleged by IOP, and the reasonable inferences from those facts, suggest IOP is seeking to hold Grigg liable, in part, based on his conduct as an Aarrowcast executive. Much of Grigg's conduct about which IOP complains indisputably occurred while he was acting as an officer or director of Aarrowcast. It is undisputed his alleged "wrongful acts" were covered in that capacity, regardless of whether those acts were the same acts or omissions he was making as an individual shareholder. Under these circumstances, the complaint must be construed in the insured's favor, see Water Well Sols. Serv. Grp. , 369 Wis. 2d 607, ¶ 15, 881 N.W.2d 285, as coverage for IOP's claims against Grigg under Hudson's D & O policy is "fairly debatable," see Southeast Wis. Prof'l Baseball Park Dist. , 304 Wis. 2d 637, ¶ 42, 738 N.W.2d 87.
¶ 58 Under these circumstances, we would typically hold, as a matter of law, that Hudson had a duty to defend Grigg in relation to IOP's complaint and that it breached that duty by refusing Grigg's defense *497 tender. Indeed, that is precisely the relief Grigg's brief-in-chief sought. His reply brief, however, expressly withdrew his request for a determination of the duty and breach issues, abandoned certain arguments as addressed by Hudson in its response brief,[16] and suggested we instead remand the matter to the circuit court for further proceedings consistent with this opinion.
¶ 59 As a result, and for purposes of this case only, our holding is limited to a determination that Hudson failed to demonstrate that it was entitled to judgment as a matter of law regarding its duty to defend based on its "capacity" argument. The judgment is therefore reversed, and we remand for further proceedings consistent with this opinion. On remand, the circuit court should grant summary judgment to Grigg on the issue of the duty to defend if it concludes there are no genuine issues of material fact and Grigg is entitled to judgment as a matter of law. If the court so concludes, it should also address whether Hudson has breached its duty to defend and, if necessary, determine the extent of damages Grigg sustained as a result of that breach.
II. Hudson Insurance as a Proper Party
¶ 60 Hudson argues that, regardless of the merits of Grigg's duty-to-defend claim, the circuit court *498 properly granted Hudson Insurance's motion to dismiss it as a party. As an initial matter, Hudson contends Grigg has abandoned the issue by failing to challenge it in his brief-in-chief. We disagree, insofar as Grigg's initial brief asserted both Hudson Insurance and Hudson Specialty remain proper parties "until appropriate discovery on responsibility and involvement in the earlier proceedings can be properly adjudicated." *199 ¶ 61 Hudson alternatively argues Grigg is not entitled to further discovery regarding the identity of the proper insurance party. According to Hudson, Grigg's amended pleading was fatally deficient because it failed to affirmatively allege the existence of any contract with Hudson Insurance. This argument ignores the fact that the allegations in Grigg's amended complaint were made jointly against both Hudson Insurance and Hudson Specialty. This argument also ignores the process whereby Hudson Insurance was added as a party in the first instance.
¶ 62 Although Grigg did not explicitly allege the existence of a contract between Aarrowcast and Hudson Insurance, he did allege-correctly-that Hudson Insurance had previously declared itself to be the real party in interest. Hudson later backtracked, claiming it had been mistaken in its initial belief and that Hudson Specialty was the correct party. The insurance policy is not a model of clarity regarding the insurer's identity: the policy denominates "Hudson Specialty Insurance Company" as the "insurer," but the policy also variously refers to the "Hudson Insurance Group" and "Hudson Financial Products."
¶ 63 Given these factors-the lack of clarity offered by the policy, Hudson Insurance's initial representation *499 that it was the correct party, and the circuit court's not having fully vetted the issue-we conclude remand is appropriate to ascertain the correct insurer.[17] Mistaken or not, Hudson has admitted in at least one pleading that Hudson Insurance was the correct party to be named, and Grigg filed an amended complaint in reliance on that admission. We cannot conclude at this juncture that there is no issue of fact regarding the identity of the proper insurance entity, and Grigg has properly preserved his right to determine which entity is, in fact, the proper party.
III. Notice of Claim
¶ 64 Hudson also argues the circuit court's decision should be affirmed because "Grigg and/or Aarrowcast breached the notice conditions in the Policy." Hudson reasons that IOP's December 2013 demand letter is "interrelated" with the New York state litigation, such that the two are "consequently treated as one claim under the Policy."[18] Accordingly, and pursuant to the terms of the insurance policy, Hudson argues Grigg or Aarrowcast was required to provide a notice of claim "as soon as practicable" after receiving the demand letter. Hudson claims it did not receive a notice of claim until November 2015, when Hudson Specialty was served with the complaint in this lawsuit.
¶ 65 Grigg offers a number of arguments in response to Hudson's assertion of late notice, but the *500 dispositive one, here, is as follows: Even assuming Hudson did not timely receive notice, the record and the parties' arguments on appeal show Grigg has satisfied his burden of demonstrating Hudson was not prejudiced by the delay.[19] *200 "By statute, ... the failure to provide timely notice as required by the policy does not defeat coverage unless the insurer is prejudiced thereby; where notice is more than one year overdue, the burden is on the insured to demonstrate lack of prejudice." International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶ 8, 304 Wis. 2d 732, 738 N.W.2d 159 (citing WIS. STAT. §§ 631.81, 632.26 (2005-06), and Fireman's Fund , 261 Wis. 2d 4, ¶ 59, 660 N.W.2d 666 ). Given these authorities, Hudson is incorrect when it argues prejudice is not required.[20] *501 ¶ 66 Prejudice to the insurer in this context is a "serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice." International Flavors & Fragrances , 304 Wis. 2d 732, ¶ 9, 738 N.W.2d 159 (quoting Neff v. Pierzina , 2001 WI 95, ¶ 44, 245 Wis. 2d 285, 629 N.W.2d 177 ). Although Grigg bears the burden of showing no prejudice, see Fireman's Fund , 261 Wis. 2d 4, ¶ 59, 660 N.W.2d 666, we note Hudson has not identified any prejudice it suffered beyond its inability to "participate in investigating or settling the J.H. Whitney case and the matters described therein." (Formatting altered.)
¶ 67 It is not clear how Hudson's claimed inability to participate in the Southern District of New York proceedings have any bearing on whether it was prejudiced by Grigg's delay in providing notice. Although the claims in that case generally arose out of the same transaction, Grigg was not a party to that lawsuit. Indeed, none of Hudson's insureds-which were Aarrowcast Holdings, Inc., and its subsidiaries-was a party to that litigation. Moreover, Hudson does not attempt to explain how timely notice from Grigg of the December 2013 demand letter would have changed the results of that litigation, which ultimately released *502 J.H. Whitney, JHW, and Aarrowcast Holdings, LLC, from any liability to IOP. It is not apparent why Hudson would have undertaken a defense of Grigg prior to the time when his alleged liability was at issue in a lawsuit.
¶ 68 In any event, the record conclusively shows the lack of any prejudice stemming from the alleged nearly two-year delay in notice because Hudson does not argue it would have provided a defense of Grigg upon receiving earlier notice. Through service of the present declaratory judgment action, Hudson received notice *201 of the claims against Grigg before a lawsuit had even been commenced against him. According to Grigg's initial complaint, the December 2013 demand letter accused Grigg of engaging in "wrongful acts undertaken in his capacity as director, officer and employee of Aarrowcast." Hudson's initial answer denied this allegation; it denied a similar allegation contained in Grigg's amended complaint. Indeed, Hudson has repeatedly and consistently denied that the demand letter alleged any wrongful acts within the scope of its policy. Given such consistent denials, we cannot conceive of a scenario in which Hudson would have offered to defend Grigg, even if Grigg had immediately notified Hudson of that letter's contents. Hudson does not even posit such a scenario.
¶ 69 In reaching this holding, we take our cue from Fireman's Fund , in which the insurer similarly argued it had no defense duties because its insured failed to provide timely notice of a lawsuit. See Fireman's Fund , 261 Wis. 2d 4, ¶ 58, 660 N.W.2d 666. The insured did "not dispute that its notice was neither prompt nor timely." Id. Although the delay in that case encompassed more than a year-thereby giving rise to the presumption of *503 prejudice-our supreme court nonetheless concluded that the insured had sufficiently rebutted the presumption by showing the insurer would have refused to indemnify or defend the insured had timely notice been given. Id. , ¶¶ 59, 61-63.
¶ 70 Admittedly, the record evidence that led our supreme court to this conclusion was different in nature than the evidence in this case: in Fireman's Fund , the insurer's litigation manager testified he would have denied a duty to defend even if notice of the lawsuit had been given only one month after the complaint's filing. Id. , ¶ 62. But this hardly seems a material distinction where, as here: (1) the insurer has repeatedly denied in pleadings that, at the time notice was allegedly due, its insured had been the subject of a claim within the scope of coverage; and (2) the insurer has not even argued or otherwise averred it would have provided a defense upon receiving earlier notice. Although the existence of prejudice is ordinarily a question of fact, courts have repeatedly held that it may be resolved on summary judgment where there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. See id. , ¶ 59 ; International Flavors & Fragrances , 304 Wis. 2d 732, ¶ 8, 738 N.W.2d 159. Such is the case here.
IV. Issue Preclusion
¶ 71 Hudson argues Grigg is barred by the doctrine of issue preclusion from asserting in this appeal that the circuit court improperly granted summary judgment in Hudson's favor. To understand the contours of Hudson's argument in this respect, some additional procedural facts are necessary. Grigg's notice of appeal sought review of the circuit court's order dismissing his claims against all of the defendants. On *504 November 14, 2016, Grigg notified this court that it had reached an out-of-court resolution with Aarrowcast, IOP and Axis, and that he desired to withdraw his appeal as to those parties. We subsequently entered an order dismissing the appeal as to those parties.[21] *202 ¶ 72 Essentially, Hudson argues that the circuit court's decision as to each of the defendants rested upon the same basis (i.e. , that IOP had alleged claims only against Grigg in his individual capacity), even though one set of claims involved liability insurance coverage and the other indemnification. As Hudson's reasoning goes, because Grigg is no longer appealing that underlying determination as to several other defendants, issue preclusion mandates that he also cannot continue to appeal that determination as to Hudson. In other words, Hudson claims the fact that the circuit court's decision is left undisturbed as to Aarrowcast, IOP and Axis is dispositive of this appeal as to Hudson, because the circuit court's decision regarding Hudson rested on the same "individual capacity" basis as the court's decision regarding the settling defendants. We find this seemingly novel position without merit.
¶ 73 Issue preclusion "is designed to limit the relitigation of issues that have been actually litigated *505 in a previous action." Paige K.B. ex rel. Peterson v. Steven G.B. , 226 Wis. 2d 210, 219, 594 N.W.2d 370 (1999) (quoting Lindas v. Cady , 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) ). However, application of the doctrine is not limited to subsequent actions and "can apply to subsequent proceedings within the same action." Precision Erecting, Inc. v. M & I Marshall& Ilsley Bank , 224 Wis. 2d 288, 304, 592 N.W.2d 5 (Ct. App. 1998). Nonetheless, Hudson has failed to point to any case similar to this one, in which a litigant participating in multi-party litigation was barred from continuing to litigate an issue on appeal against one defendant merely because he or she settled with some other defendants and voluntarily dismissed them as parties to that appeal.
¶ 74 While Hudson cites Precision Erecting as controlling authority, that case is plainly not on point. Precision Erecting "is a seminal case discussing a party-defendant's obligations on a motion for summary judgment to avoid issue preclusion and the circuit court's exercise of its discretion in applying issue preclusion." Rille v. Physicians Ins. Co. , 2007 WI 36, ¶ 64, 300 Wis. 2d 1, 728 N.W.2d 693. Precision Erecting held that, in multi-party litigation, where one party's summary judgment motion will decide an issue that another litigant contests, that litigant has an obligation to participate in the disposition of that motion (even if it is not the party against whom the motion is directed) or risk being bound to whatever determination the circuit court makes. Precision Erecting , 224 Wis. 2d at 303-09, 592 N.W.2d 5.
¶ 75 Precision Erecting does not support the notion that issue preclusion is properly applied merely because a litigant settles with some parties aligned in interest on an appealed issue while that appeal is *506 pending. To the contrary, the Precision Erecting court held the litigant would have been entitled to pursue an appeal had it first raised the precluded issue in the circuit court, thereby preserving the matter for appeal. Id. at 306-07, 592 N.W.2d 5. Practical considerations counseled against permitting the litigant to "lie in the weeds during the initial summary judgment motion only to make its attack after the fact." Id. at 307, 592 N.W.2d 5. This case involves no such gamesmanship or any similar concern.
¶ 76 We also reject Hudson's reliance on a pair of cases concerning collateral attacks to a judgment. In Haase v. R & P Industrial Chimney Repair Co. , 140 Wis. 2d 187, 409 N.W.2d 423 (Ct. App. 1987), *203 the appellant, R & P, had failed to appeal an earlier summary judgment absolving a co-defendant of liability. Id. at 190-91, 409 N.W.2d 423. Following a trial, R & P argued the circuit court erroneously excluded the issue of the co-defendant's liability from the verdict form. Id. at 191, 409 N.W.2d 423. We flatly rejected R & P's argument that the earlier summary judgment was "not binding precedent to be followed in successive stages of the same litigation." Id. Again, we focused on the fact that R & P had not pursued an appeal of the summary judgment: "When no appeal is taken, as here, all provisions of a judgment, and the findings and conclusions upon which it is based, are conclusive and binding upon all parties to the litigation." Id. at 191, 409 N.W.2d 423. Haase relied on an earlier case, Kriesel v. Kriesel , 35 Wis. 2d 134, 150 N.W.2d 416 (1967), in which a litigant was precluded from "raising possible infirmities in the original judgment" in response to a contempt order because he had not appealed the original judgment. Id. at 139, 150 N.W.2d 416. Here, Grigg has pursued an appeal, and he did so against all parties before ultimately settling his *507 claims against Aarrowcast, IOP and Axis while his appeal remained pending. Unlike Haase and Kriesel , this case does not involve a collateral attack on a judgment that was not appealed from.
¶ 77 In sum, none of the authorities on which Hudson relies, and none of the authorities we have discovered, compel the novel application of issue preclusion that Hudson seeks. Hudson's proposed rule potentially compromises an aggrieved party's statutory right of appeal, see WIS. STAT. § 808.03(1), and discourages parties from amicably resolving their disputes in contravention of state public policy encouraging settlements, see Ruediger v. Sheedy , 83 Wis. 2d 109, 125, 264 N.W.2d 604 (1978). If the doctrine of issue preclusion is to be so expanded, that matter is best left to our supreme court. See Blum v. 1st Auto & Cas. Ins. Co. , 2010 WI 78, ¶ 47, 326 Wis. 2d 729, 786 N.W.2d 78 (citing Cook v. Cook , 208 Wis. 2d 166, 188-89, 560 N.W.2d 246 (1997) ) (observing that the supreme court is the primary law-developing court of this state).
By the Court. -Order reversed and cause remanded for further proceedings.

Raymond Grigg died while this action was pending. Consequently, the Special Administrator of his Estate was substituted as a party.

Where appropriate, we will refer to Hudson Specialty and Hudson Insurance jointly as "Hudson." Those companies have filed a joint brief on appeal.

A holding company is a company formed to control other companies, usually confining its role to owning stock and supervising management. Marks v. Houston Cas. Co. , 2016 WI 53, ¶ 4 n.3, 369 Wis. 2d 547, 881 N.W.2d 309 (quoted source omitted). Aarrowcast's acquisition and holding were structured such that Aarrowcast Holdings eventually was the business vested with J.H. Whitney's direct ownership stake in Aarrowcast.

The purchase agreement identified the company being sold as "Aarrowcast Holdings, Inc." Based on the record and the parties' briefing, it appears Aarrowcast, which is the defendant in this lawsuit, is a subsidiary of Aarrowcast Holdings, Inc., which is the holding company presently running the business. Aarrowcast Holdings, Inc., is a distinct entity from the limited liability company Aarrowcast Holdings, which was the seller in the stock transaction. For our purposes, then, Aarrowcast and Aarrowcast Holdings, Inc., are generally indistinguishable.

The management team also asserted it was entitled to indemnification and defense costs from Aarrowcast and Aarrowcast Holdings. Neither Aarrowcast nor Aarrowcast Holdings is a party to the present appeal, and we therefore need not address the extent of their liability, if any, to Grigg.

The policy covered the named insured, which was Aarrowcast Holdings, Inc., as well as its subsidiaries. Hudson does not present any argument on appeal that either Aarrowcast or Grigg are not entitled to coverage because they are not named insureds under the policy.

Among other things, Grigg also claimed that Aarrowcast was required to indemnify him, that IOP's allegations against him were baseless, and that IOP was precluded from pursuing any further claims against him as a result of its settling the Southern District of New York litigation.

Although the motions were denominated motions for declaratory judgment, the parties appear to agree on appeal that they are properly treated as summary judgment motions.

At the earlier motion hearing, counsel for IOP and Aarrowcast had dismissed this allegation as merely "background to show essentially he [Grigg] was in a position to say he knows the things we say, that he knows the question on the indemnity or fraud claim, and did Mr. Grigg in fact have knowledge that he had a duty to disclose and they dispute that."

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Given this rule, it is not clear whether "duty-to-defend" suits commenced before the insured is even sued are amenable to a declaratory judgment procedure, at least to the extent that it may be difficult to determine an insurer's obligations prior to the time when a lawsuit against the insured is actually filed. We need not answer that question in the present case, however, as IOP filed a complaint against Grigg in New York state court shortly after Grigg commenced this action. Thus, as a practical matter, Hudson's duty to defend was ascertainable at the time the circuit court decided Grigg's and Hudson's cross-motions for summary judgment. Additionally, we note that Grigg filed an amended complaint in this action after IOP filed the New York state litigation. See Holman v. Family Health Plan , 227 Wis. 2d 478, 484, 596 N.W.2d 358 (1999) (noting an amended complaint supersedes or supplants the original complaint).

At a minimum, Hudson does not focus on the definition of an "Insured Person," and it does not develop any argument that Grigg did not satisfy this definition. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82. Hudson's brief does not appear to dispute that Grigg was an Aarrowcast "director or officer" at the relevant times but, rather, it challenges the notion that his alleged misconduct occurred in connection with his duties in those roles.

To illustrate this concept, the court presented the following hypothetical: "So, for example, if the complaint alleges facts that if proved would show that the insured had infringed the plaintiff's copyright, the policy kicks in even if the complaint charges the insured only with fraud or intentional infliction of emotional distress." Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc. , 43 F.3d 1119, 1122 (7th Cir. 1994).

This argument is, at best, dubious. The "admission" was not contained in any sort of pleading but, rather, in Grigg's reply brief before the circuit court, and Grigg merely stated that "IOP alleges claims for breach of the Stock Purchase Agreement and common-law fraud."

Hudson argues Heffernan v. Pacific Dunlop GNB Corp. , 965 F.2d 369 (7th Cir. 1992), is materially distinguishable because Heffernan's right to indemnification arose under a Delaware statute that is "much broader than Hudson Specialty's policy language which controls whether there is a duty to defend." While the sources of the duties in Heffernan and in this case are no doubt different, we fail to see why this matters. Both the statute in Heffernan and the insurance policy in the present case look to whether the person has been sued for something he or she did in his or her official capacity. What is more, Hudson does little to explain the purported difference in breadth between its insurance policy and the Delaware statute.

In particular, Hudson argued in its response brief: "Even if this Court were to reverse the Circuit Court's ruling on the capacity issue, the Estate is not entitled to judgment in its favor and the case must be remanded for further proceedings[,]" and "a reversal of the Circuit Court's decision does not mean that there is a duty to defend or coverage." Grigg expressly abandoned any argument regarding these assertions in his reply brief.

Although Hudson Insurance's attorney raised the issue of the proper party at a motion hearing, the circuit court appears not to have addressed on the record its reasons for granting the motion.

A "claim" under the policy includes "a written demand for monetary or non-monetary relief."

By disposing of the issue in this manner, we assume, without deciding, the following: (1) that the December 2013 demand letter was a "claim" within the meaning of the policy, for which notice was required; (2) that the "claim" contained in the demand letter was "interrelated" with the claims contained in IOP's subsequent lawsuit against Grigg, such that earlier notice was required; and (3) that Grigg provided otherwise timely notice of the claim to Hudson under the relevant policy language.
We note, however, that when it answered the amended complaint, Hudson admitted that the December 2013 demand letter "is not a claim against Grigg under the Hudson Policy issued to Aarrowcast Holdings, Inc." Hudson's present appellate arguments are contrary to that admission.

Citing Anderson v. Aul , 2015 WI 19, 361 Wis. 2d 63, 862 N.W.2d 304, Hudson claims "[n]otice is an integral part of claims[-]made policies like the Policy at issue herein." Anderson , however, involved not just a "claims-made" policy, but a "claims-made-and-reported policy," wherein both the claim and its reporting to the insurer must occur during the policy period. Id. , ¶ 3. For the latter type of policies, Wisconsin's notice-prejudice statutes do not supersede the policy requirement that claims be reported during the policy period. Id. , ¶ 7. However, as Hudson's own argument alludes to, the policy here was a claims-made policy. The relevant insuring agreement does not condition coverage upon notice during the policy period; instead, notice is governed by a separate provision that merely required notice "as soon as practicable," which could occur up to a certain time after the termination of the policy period or any applicable discovery period. We therefore reject Hudson's reliance on Anderson .

On January 20, 2017, following the filing of Hudson's response brief, Grigg filed in this court a motion to correct and supplement the record. We denied that motion because it did not explain the context and relevance of the materials sought to be added. Grigg's briefing again requests that we take judicial notice of these materials, which relate to Grigg's resolution with the other defendants. Given the manner in which we resolve the issue preclusion matter that Hudson raises, it is not necessary for us to take judicial notice of any extra-record materials, and we therefore decline to do so.